FILED
IN CLERKS OFFICE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

2005 MAR -8 P 12: 08

U.S. DISTRICT COURT
DISTRICT OF MASS.

KEITH D. WASHINGTON,
    *Plaintiff, pro se*

RELATED TO DOCKET# 04-12141DPW

Vs
Equal Employment Opportunity Commission (EEOC)

05-10619

*Referred to MJ JGDein*

ROBERT L. SANDERS, in his individual and
Official Capacity as, EEOC- Director Boston Area Office

EDITH KESSLER, in her individual and official
Capacity as Investigator at EEOC-BOSTON

    *Defendant(s)*

## COMPLIANT FOR DAMAGES FOR DEPRIVATION OF CONSTITUTIONAL RIGHTS, NEGLIGENT MISREPRESENTATION, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### NATURE OF THE ACTION

1. Plaintiff, Keith D. Washington, *pro se* ("Washington"), brings this action under the Federal Tort Claims Act, ("FTCA"), against, EEOC, Robert L. Sanders, Director, EEOC-Boston Area Office, and Edith Kessler, Investigator, EEOC-Boston Area Office, (collectively "the defendants"), deprivation of constitutional rights, breach of implied contract, negligent misrepresentation and intentional infliction of emotional distress. As detailed in the following paragraphs, Washington, who filed a discrimination compliant against his employer, State Street Bank & Trust Company, was wrongly deprived of his constitutionally guaranteed "*liberty interest*", without due process of law, as a result of the publication of hotly disputed stigmatizing information by EEOC and the individual defendants after the EEOC and individual defendants knew and/or should have known that the charged violations were unsupported by any credible evidence and reliance carefully selected self-serving documentation and pleadings by counsel for State Street Bank & Trust

Company, an employer with a well documented record of discriminatory and retaliatory conduct during the period of July 1992 through October 1996, was negligent. Because of the defendants' arbitrary, capricious, and outrageous conduct, Washington has suffered mental anguish, embarrassment, humiliation and severe financial distress. He therefore seeks compensatory damages in the amount of $25,000,000.00, the expungement of all mention of the allegations of misconduct, immediate reopening/full investigation and litigation of Washington's timely filed discrimination compliant, court cost, injunction relief and such further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is also invoked pursuant to 28 U.S.C. 1346(b)..

## JURISDICTIONAL PREQUISITIES

3. Federal Tort Claims Act ("FTCA")

Through the enactment of the FTCA, the government has generally waived its sovereign immunity from tort liability for the negligent or wrongful acts or omissions of its agents who act within the scope of their employment.

4. Constitutional And State Law Violations

Plaintiff's claim under FTCA alleges conduct that violates the Constitution as well as laws of the Commonwealth of Massachusetts. [FDIC v. Meyer, 114 S. Ct. 996, 1001 (1994). Since publication of it's erroneous findings, Plaintiff, in his individual capacity, has filed multiple complaints with the EEOC.

5. Plaintiff is Entitled to Equitable Tolling [28 U.S.C. 2401(a)

The rationale for the judge-made doctrine of equitable tolling is to protect laypersons from the harsh consequences of strict application of procedural requirements. This is especially true for laypersons that seek redress for unlawful civil rights violations. A number of circuits have concluded that mental illness can justify equitable tolling. In Irwin v Department of Veterans Affairs, 498 U.S. 89 (1990), the Supreme Court held that there is a rebuttable presumption that all federal statues of limitations contain an implied equitable tolling provision. A careful study of Supreme Court precedent, as well as that of the regional circuits, reveals that equitable tolling is available in a variety of circumstances including

2

when a party has been mentally incapacitated. While the Supreme Court has yet to specifically address whether mental illness can justify equitable tolling, in *Irwin*, an employment discrimination case, petitioner claimed that the 30-day period prescribed in 42 U.S.C. section 2000e-16( c) should be tolled because his attorney was out of the country and did not, therefore personally receive the relevant notice. *498 U.S. at 91*. That case recognized that equitable tolling applied in suits against the government, but did not discuss the availability of tolling based on mental illness. *Id at 95-96*. Subsequently, *United States v. Brockamp, 519 U.S. 347 (1997)*, a tax refund case, was decided. In Brockamp, the Ninth Circuit had determined that petitioners who suffered from alcoholism and senility, were entitled to equitable tolling of 36 U.S.C. section 6511. *519 U.S. at 319*. Although the Supreme Court concluded that section 6511 should not be subject to equitable tolling because the Irwin presumption had been rebutted, it said that **"[mental disability], we assume, would permit a court to toll the statutory limitations period."** *Id at 348.* <u>Therefore, the Court has intimated that tolling based on mental incapacity is allowed.</u> More recently, it decided *Young v. United States, 535 U.S.* 43 (2002), a bankruptcy case that involved whether 11 U.S.C. section 507(a)(8)(A)(i)'s lookback period could be tolled during the pendency of a prior bankruptcy petition. The Court noted that equitable tolling has been widely permitted in the two situations acknowledged in *Irwin*, supra, and its progeny. *Young, 535 U.S.at 50*. Significantly, and of critical importance to the outcome of *Young*, the Supreme Court said, "*We have acknowledged, however, that tolling might be appropriate in other cases, and this we believe is one.*" Id. (citations omitted). Equitable tolling of federal statues of limitations is therefore available in more than the two circumstances described in *Irwin* and *Bailey.* See *Nunnally v. MacCausland, 996 F. 2d 1, 5 n.7 (1st Cir. 1993)*. ("*A fair reading of Irwin, however, shows that the Court did not undertake an exhaustive list of factors that may be considered in the equitable weighing process.*"). In addition to the guidance provide by the Supreme Court, several circuits have allowed equitable tolling based on mental illness. This circuit has established that mental incapacity is a suitable basis on which to equitably toll a statue of

3

limitations. See *Melendez-Arroyo v. Culter-Hammer DE P.R., Co., 273 F.3d 30, 39 (1st Cir. 2001)* (the mental illness must have been "so severe that the plaintiff was [un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel." Remanding for factual inquiry into whether plaintiffs mental state warranted equitable tolling); *Nunally, 996 F. 2d at 5* (holding that 5 U.S.C. section 7703(b)(2) can be tolled due to mental incapacity); *Oropallo v. United States, 994 F. 2d 25, 28 n. 2 (1st Cir. 1993)*(holding that 26 U.S.C. section 6511 may not be equitably tolled, but that mental incapacity is grounds for tolling when available.). The Second, Sixth, Seventh, Ninth and D.C. Circuits have held the same in a variety of circumstances. See *Zerilli-Edelglass v. New York City Transit Auth., 333 F. 3d 74, 80 (2d Cir. 2003)* ("Equitable tolling is generally considered appropriate where... a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion.") (citations omitted); *Chapman v. Choicecare Long Island Term Disability Plan, 288 F. 3d 506, 514 (2d Cir. 2002)*(recognizing mental incapacity as a basis for equitable tolling under ERISA); *Brown v. Parkchester S. Condos., 287 F. 3d 58, 60 (2d Cir. 2002)* (Title VII case finding that plaintiff proffered sufficient evidence to warrant a hearing on whether her mental incapacity required tolling); *Boos v Runyon, 201 F. 3d 178, 184 (2d Cir. 2000)*(holding that 29C.F.R. section 1614.105(a)(1) is subject to equitable tolling based on mental illness); *Canales v Sullivan, 936 F. 2d 755, 756 (2d Cir. 1991)*(holding that 42 U.S.C. section 405(g) may be equitably tolled based on a plaintiff's mental impairment); *Cantrell v Knoxville Cmty. Dev. Corp., 60 F. 3d 1177, 1180 (6th Cir. 1995)*(holding that attorney's mental illness may justify equitable tolling); *Miller v. Runyon 77 F.3d 189, 191 (7th Cir. 1996)*(finding that 29 U.S.C. section 791 may be tolled "if the plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time"); *Stoll v Runyon, 165 F. 3d 1238, 1242 (9th Cir. 1999)*(holding that mental incapacity is an extraordinary circumstance that may warrant equitable tolling); *Smith-Hayne v Dist. of Columbia, 155 F 3d 575, 579 (D.C. Cir. 1998)* (holding that the doctrine of

4

equitable tolling "can fairly be read to encompass cases where a plaintiff has been unable to [timely file] because of disability"). The Third Circuit has allowed equitable tolling based on mental illness, but has limited its application. In Lake v Arnold, 232 F 3d 360, 364 (3d Cir. 2000), a mentally retarded women sued her family and physicians for having sterilized her without her consent. She filed her 42 U.S.C. section 1983 and 1985 claims outside the applicable two-year statue of limitations. Id. The court determined that the statue of limitations could be tolled because the incompetence that caused the delay also "motivated to some degree, the injury that [s]he sought to remedy." Id at 371.

6. Equitable Tolling Is Warranted Under First Circuit Guidelines

Plaintiff has been unrepresented by counsel during the relevant filing period, the documented severity of his mental disability resulted in plaintiff's inability to engage in rationale thought and deliberate decision-making, necessary to pursue his claim alone.

7. Statue of Limitations [28U.S.C. 2401(b)

Plaintiff's administrative claim to EEOC, dated April 12, 2004, was denied in a letter dated September 9,2004, in a letter from Leonora L. Guarraia, Chief Operating Officer. Reconsideration of Washington's tort claim was again denied by letter dated December 7,2004. Instant compliant is filed within the six-month applicable period of both letters.

8. Individual Defendants Are Not Entitled To Qualified Immunity

EEOC without benefit of depositions, answers to interrogatories, admissions on file, affidavits, live testimony or oral argument, although multiple material facts were in dispute, published stigmatizing information regarding the reasons for petitioner, an at-will employee, termination from State Street Bank & Trust Company, which is disputed. It is reasonable to expect that EEOC would have been aware that publishing stigmatizing information is unlawful absent a name-clearing hearing. Preexisting federal law as determined by the Supreme Court provided Defendant's with fair warning that it's conduct was unlawful. EEOC findings dated December 17,1997In this country where racism is institutionalized, there is no doubt that EEOC's findings, which alleged, "...*After discovery of*

5

<u>*Complaint's improprieties of respondent's money, Respondent gave Compliant the option of resignation or termination. ..*</u>" Would seriously impair Petitioner's outstanding reputation for honesty and morality among family, friends and within the global financial services industry where he has worked in positions of increasing responsibility for +30 years, with the expected adverse financial consequences. Although the allegations were hotly disputed, EEOC's failure to provide plaintiff any opportunity to be heard on this material point, which clearly had severe adverse consequences to his reputation and integrity, represented a clear violation of federal law regarding the minimum requirements of due process as determined by the Supreme Court. Defendant's knew or should have known that since it's findings were subject to full public disclosure, by counsel for State Street, the procedural protections of due process applied. Defendant's clearly violation of clearly defined federal law as defined by the Supreme Court raises important issues regarding the quality of its investigative training, supervision and adequacy of internal control procedures. The issues here are not complicated and there is no ambiguity in federal law governing publication of stigmatizing employee information, qualified immunity is not warranted

## PARTIES

9. Plaintiff Keith D Washington, [hereinafter referred to as "Washington"] is not a public figure and currently a resident of Atlanta, Georgia.
10. Defendant EQUAL EMPLOYMENT OPPORTUNITY COMMISSION [hereinafter referred to as "EEOC"] is sued in its capacity as the federal agency responsible for ensuring equality of opportunity by enforcing the federal government's anti-discrimination laws in employment, housing, public accommodations, credit, mortgage lending, and education. EEOC has it's principal offices at 1801 L Street NW, Washington, D.C. 20507
11. Defendant EDITH KESSLER, [hereinafter referred to as "Investigator"] was at all times mentioned in this compliant assigned to the EEOC-Boston Area Office and was the designated investigator assigned to Charge # 16C973396, Washington v. State Street Bank & Trust Company.

12. Defendant ROBERT L. SANDERS, [hereinafter referred to as "Area Manager"] was at all times mentioned in this compliant assigned to the Boston Office of EEOC and was the designated supervisor assigned to Charge # 16C973396, Washington v. State Street Bank & Trust Company.

**FACTS**

13. Keith D. Washington, "Petitioner", is a 58 year old African-American, who currently resides at 6265 Magnolia Ridge, Stone Mountain, GA. 30087

14. Washington is not a public figure.

15. Washington was hired on July 2,1992, as a vice president, in the Credit Risk Policy Group by Defendant, State Street Bank & Trust Company, ("State Street"), reporting to Howard H. Fairweather, Executive Vice President.

16. Washington was the only African-American senior manager in the Credit Risk Policy Group.

*17.* Washington was assigned a pay grade statistically lower than that of other professionals reporting directly to "Fairweather" and inconsistent with "State Street" compensation guidelines as documented in its employee manual, "Wavelength's" states *"Starting Salaries- New employees are hired at a starting salary commensurate with their experience, education, and other qualifications and within the parameters of the established salary range for the position."*

18. As a result of the lower pay grade, Washington's compensation, salary + bonus, was substantially less than other professionals reporting to "Fairweather" during the term of his employment.

19. Wavelength's, provides as follows, *"Global Human Resources reviews salary ranges at least annually...Employees are paid at least the minimum of their [salary] range. Whenever salary ranges are adjusted upwards, employees with salaries below the new range minimum will have their salaries brought to the new level at the time of the change or at their annual review."*

20. Washington's 1996 Performance Appraisal rated his performance as Outstanding, among the top 10% of all State Street officers with the following comments from his manager, H.F. Fairweather, Executive Vice President:

7

*"KDW's persistent and calm manner has shown clear results in winning over line unit managers to his process oriented approach to Risk Management...His contribution is extremely valuable."*

21. 'Wavelength's" on page 28, *"Merit Increases"* provides *"Through the merit program, outstanding performers are rewarded with significant increases."* State Street" failed without explanation to provide a compensation increase notwithstanding Washington's outstanding performance and the fact that executive management knew or should have known that his compensation was substantially lower than peers and inconsistent with the broad global scope of his responsibilities.

22. Washington was appointed Senior Vice President on April 11,1996, by the Executive Committee of the "State Street" Board of Directors.

23. 'Wavelength's" on page 28, *"Promotional Increases"* provides *"In the event of a promotion, your salary may be increased based on performance and position in the new range...If your salary is below the minimum of the new salary range, the salary will be brought to the minimum."*

24. State Street" failed without explanation to provide a compensation increase notwithstanding Washington's senior management appointment and the fact that executive management knew or should have known that his compensation was substantially lower than peers and inconsistent with the broad global scope of his responsibilities.

25. Washington was placed on unpaid leave, by email, on August 15,1996, as a result of administrative lapses regarding expense accounting.

26. Upon his return from a long planned 2-week vacation which included dropping his daughter off for her freshman year at Spellman College, Atlanta, Ga., petitioner submitted his letter of resignation to "Fairweather" during dinner at a local Chestnut Hill restaurant, (Ground Round) or about September 9,1996.

27. Fairweather **declined to accept the letter of resignation** and proposed looking into having the bank provide an executive loan[1], $100,000.00, to relieve short-term cash flow problems, caused by Washington having to

---

[1] Standard operating procedure for relocating senior executives

maintain two homes, pay his daughter's college tuition, keep his son in private school and provide support for his elderly parents who lived with him on Long Island.

28. On September 12, 1996 the request for an executive loan was formalized and fully documented in a letter to Fairweather, which clearly summarized the specific causes of my financial difficulties and the source of loan payback.

29. "State Street" declined to provide the executive loan and on October 8,1996, Howard H. Fairweather, Executive Vice President, ***over dinner*** at Logan Airport, Boston, advised petitioner that his resignation would be accepted. The date October 9, 1996 was written in the resignation letter previously submitted to Fairweather and initialed by petitioner.

30. According to Fairweather[2], resignation was by "***mutual agreement***".

31. Fairweather provided petitioner with a written contract to memorialize the terms of his **no-fault termination** on the business card of Nancy Savage, Vice President/Human Resources which clearly spelled out the specific terms of separation as follows: (1) Separation by "mutual agreement"; (2) to be paid through October 8,1996 plus 13 days of accrued but unused vacation; (3) unemployment compensation under M.G.L. 151B would be paid.

32. On or about October 12, 1996 Washington's resignation for "***personal reasons***" was announced throughout the bank, by memo from Fairweather.

33. Shortly after his resignation Washington advised MN Carter, Chief Executive Officer of "State Street", a close professional colleague of over 20 years that he was suffering from stress and felt burned out.

34. State Street Bank & Trust Company paid unemployment compensation pursuant to M.G.L. 151B for 26 weeks.

35. During November 1996, Washington contacted MN Carter, CEO, requesting an executive severance package[3] consistent with his position as a senior vice president.

---

[2] As an executive officer and member of the management committee, Fairweather is clearly a corporate proxy.
[3] Severance/bridge pay are part of the terms and conditions of employment at "State Street" pursuant to its employee manual "Wavelengths"

9

36. In a letter dated and mailed on January 6,1997, Washington's request for severance was denied as follows, State Street "*shall not entertain severance compensation to you...*", with a copy to John Towers, State Street General Counsel

37. On July 25, 1997 Washington filed duel discrimination complaints as follows" (1) EEOC #97-BEM-3045 and (2) EEOC Charge # 16C973396 based on a continuing pattern of race based discrimination culminating with the denial of severance benefits on/or about January 6,1997 and violations under Americans with Disabilities Act.

38. In response to petitioner's complaint filed with EEOC Patricia A. Granger, Esq. in her capacity as counsel for State Street Bank & Trust Company, submitted information, she knew or should have known to be materially false and defamatory regarding the terms of petitioners no-fault termination as an at will employee.

39. In response to petitioner's complaint filed with EEOC, Mary E. O'Neal, Esq. in her capacity as counsel for State Street Bank & Trust Company submitted information, she knew or should have known to be materially false and defamatory regarding the terms of petitioners no-fault termination as an at will employee.

40. In response to petitioner's claim for workers compensation benefits[4] filed with Liberty Mutual Insurance Company, after closed-door private discussions with John Towers, SVP/General Counsel of State Street Bank & Trust Co Jean M. Shea, Esq., in her capacity as counsel for Liberty Mutual Insurance Company, administrator for State Street Bank & Trust Company's workers compensation plan, made defamatory and false statements regarding the terms of petitioners no-fault termination as an at will employee.

41. On/or about September 30,1997 counsel for "State Street" "Respondents Motion To Dismiss" due to lack of jurisdiction based on untimely filing based

---

[4] Due State Street Bank & Trust Company as Sponsor fro the Short/Long Term Disability Plans, failure to provide information, petitioner was under the false impression he was filing for Short Term Disability benefits.

on the August 15,1996 email as the trigger date for statue of limitations purposes, which they knew to be fraudulent.

42. On or about December 17,1967, after preliminary screening by EEOC's Mary C. Garippo, investigator, Katherine M. Martin, Esq., supervisor and Douglas T. Schwartz, Investigating Commissioner, which relied exclusively on the hotly disputed pleadings of State Street Bank & Trust Company outside counsel, Patricia A. Granger, Esq., and the email of August 15,1996 concluded as follows:

> "Your compliant was not timely filed with the Commission. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations."

43. EEOC, Edith Kessler, investigator, and Robert L. Saunders, Area Director, violated petitioner's constitutional right's to due process, under the Fifth Amendment by depriving him of "liberty interest" by publishing on/or about June 4,1998, the following hotly disputed stigmatizing information;

> "... **Respondent's demand that you repay money you improperly appropriated...Respondent had no obligation to extend benefits especially to someone whose resignation was requested because of misappropriation of funds."**

This hotly disputed stigmatizing information, which represented a quasi-adjudication, was published as fact, in clear violation of well established law as determined by the U.S. Supreme Court, based on EEOC findings, defendant's pleadings and carefully selected documentation, without: (1) deposition and/or live testimony, (2) providing a name clearing hearing, (3) providing a list of evidence against him or, (3) providing any opportunity to challenge his accusers through cross examination pursuant to the Sixth Amendment.

44. "Washington's "compliant alleged he was denied severance benefits consistent with his position as a senior vice president, on the basis of race and Age, in violation of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act and the Age Discrimination in Employment Act. Washington alleged that the defendant, State Street Bank & Trust Company

11

*confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment. . . This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny."*

    b. *Wisconsin v. Constantineau, 400 U.S. 433, 437.*

"[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

    c. *Board of Regents v. Roth, 408 U.S. 564, 573(1972),*

The United States Supreme Court established that a terminated employee has a constitutional based liberty interest in clearing his name when stigmatizing information regarding the reasons for termination is publicly disclosed. Failure to provide a "name-clearing" hearing in such a circumstance is a violation of the .... due process clause. . *Roth*, gave "fair warning" that an employee's liberty interest is implicated if a charge of improper conduct impairs the employee's reputation for honesty or morality. "The procedural protections of due process apply if [as in this case] the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment....

## COUNT TWO-NEGILENT MISREPRESENTATION

51. The allegations in paragraphs 1-47 are incorporated by reference as if restated in full.
52. The false stigmatizing statements published by defendants, which were barred by the clearly defined legal doctrine of law collateral estoppel, were made with reckless disregard for the truth.
53. Much like the Spanish Inquisition, the English Court of Star Chamber and the French monarchy's abuse of the *lettre de cachet*, The defendant's gross negligence in the handling of this compliant is clearly a menace to liberty that if not soundly rejected has the potential to impacts all of us. The egregious mishandling of this compliant supports illegal retaliatory suppression of valid

14

on the August 15,1996 email as the trigger date for statue of limitations purposes, which they knew to be fraudulent.

42. On or about December 17,1967, after preliminary screening by EEOC's Mary C. Garippo, investigator, Katherine M. Martin, Esq., supervisor and Douglas T. Schwartz, Investigating Commissioner, which relied exclusively on the hotly disputed pleadings of State Street Bank & Trust Company outside counsel, Patricia A. Granger, Esq., and the email of August 15,1996 concluded as follows:

> "*Your compliant was not timely filed with the Commission. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.*"

43. EEOC, Edith Kessler, investigator, and Robert L. Saunders, Area Director, violated petitioner's constitutional right's to due process, under the Fifth Amendment by depriving him of "liberty interest" by publishing on/or about June 4,1998, the following hotly disputed stigmatizing information;

> "... **Respondent's demand that you repay money you improperly appropriated...Respondent had no obligation to extend benefits especially to someone whose resignation was requested because of misappropriation of funds.**"

This hotly disputed stigmatizing information, which represented a quasi-adjudication, was published as fact, in clear violation of well established law as determined by the U.S. Supreme Court, based on EEOC findings, defendant's pleadings and carefully selected documentation, without: (1) deposition and/or live testimony, (2) providing a name clearing hearing, (3) providing a list of evidence against him or, (3) providing any opportunity to challenge his accusers through cross examination pursuant to the Sixth Amendment.

44. "Washington's "compliant alleged he was denied severance benefits consistent with his position as a senior vice president, on the basis of race and Age, in violation of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act and the Age Discrimination in Employment Act. Washington alleged that the defendant, State Street Bank & Trust Company

11

engaged in a continuing pattern and practice of discriminating against him, in terms of compensation and other "privileges and benefits" of employment, which created a "hostile work" environment. The compliant filed approximately 199 days after he received notification that he would not receive severance pay, a contractual benefit of employment, consistent with his position as a senior vice president.

45. On June 4, 1998, Robert L. Saunders, Area Director, notified Washington as follows:
    - *"We cannot investigate your charge because it was not filed within the time limit required by law."*
    - *Notification of Right to Sue*

46. Washington's ADA claim was based allegations of improper interference with his claim for disability benefits by State Street Bank & Trust Company employees. Specifically the failure to provide accurate information regarding:
    a. Entitlement to benefits for, stress related disorders reported October 1996, under the State Street Bank & Trust Company (ERISA) Short/Long Term Disability,
    b. Applying for benefits for, stress related disorders reported October 1996, under the State Street Bank & Trust Company (ERISA) Short/Long Term Disability,
    c. Intentionally withholding from the Plan Administrator material information regarding a work environment heavily polluted with discrimination and pattern and practice of unequal/discriminatory compensation,
    d. Materially misrepresenting the terms and conditions of petitioners separation with fraudulent intent.
    e. Causing its agent, Prudential Insurance not to independently investigate his application for ERISA disability benefits.

47. Since publication of their findings, Plaintiff has written numerous letters to EEOC informing them of the falsity of their 1998 Memorandum and provided dispositive proof thereof. In response EEOC has, (1) stood by it's findings; (2)

12

re-affirmed its support for its findings; and (3) denied any liability for publishing defamatory statements. By acting in this manner EEOC and defendants herein engaged in negligent, irresponsible and libelous conduct to the harm and detriment of "Washington", and EEOC further ratified and encouraged the fraudulent and retaliatory conduct of State Street Bank & Trust Company and counsel.

### COUNT ONE-VIOLATION OF CONSTITUTIONAL RIGHTS

48. The allegations in paragraphs 1-47: are incorporated by reference as if restated in full.

49. Defendants exceed their authority by making and publishing the quasi-judicial determination "... *Respondent's demand that you repay money you improperly appropriated...Respondent had no obligation to extend benefits especially to someone whose resignation was requested because of misappropriation of funds."* The function of the civil right's commission is purely investigative and fact finding, it does not adjudicate, and it cannot take any affirmative action which will affect legal rights, and the only purpose of its existence is to find facts which may subsequently used as a basis for legislative or executive action. *Civil Rights Act of 1957 sections 101-106, 104(a) (1-3), (b,c), 42 U.S.C. sections 1975-1975e, 1975c(a) (1-3), (b-c).*

50. The United States Supreme Court has affirmed:

   a. *Greene v. McEloy, 360 U.S. 474, 496-497 (1959):*
   "*Certain principals have remained relatively immutable in our jurisprudence. One of these is that where governmental actions seriously injures and individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is true in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealously. We have formalized these protections in the requirements of*

13

*confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment. . . This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny."*

    b. *Wisconsin v. Constantineau, 400 U.S. 433, 437.*

"[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

    c. *Board of Regents v. Roth, 408 U.S. 564, 573(1972),*

The United States Supreme Court established that a terminated employee has a constitutional based liberty interest in clearing his name when stigmatizing information regarding the reasons for termination is publicly disclosed. Failure to provide a "name-clearing" hearing in such a circumstance is a violation of the …. due process clause. . *Roth*, gave "fair warning" that an employee's liberty interest is implicated if a charge of improper conduct impairs the employee's reputation for honesty or morality. "The procedural protections of due process apply if [as in this case] the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment….

### COUNT TWO-NEGILENT MISREPRESENTATION

51. The allegations in paragraphs 1-47 are incorporated by reference as if restated in full.
52. The false stigmatizing statements published by defendants, which were barred by the clearly defined legal doctrine of law collateral estoppel, were made with reckless disregard for the truth.
53. Much like the Spanish Inquisition, the English Court of Star Chamber and the French monarchy's abuse of the *lettre de cachet*, The defendant's gross negligence in the handling of this compliant is clearly a menace to liberty that if not soundly rejected has the potential to impacts all of us. The egregious mishandling of this compliant supports illegal retaliatory suppression of valid

14

challenges to illegal workplace discrimination, a complete disregard for protected "liberty rights" as well as clearly defined procedural due process. Few things are more immutable in the application of our legal system than the concept of due process. With workplace discrimination complaints rapidly increasing, with African-Americans still very much the victims of deep-seated racial stereotyping as evidenced by the research of a sociologist Devah Pager[5]:

> *"Today in America you have a better chance of being called back for a job interview if you're white with a criminal record than you do if you're black with a clean record- never having been arrested or convicted."*

Defendant's clearly established gross negligence and violation of clearly defined federal law as defined by the Supreme Court raises important issues regarding the quality of its investigative training, supervision and adequacy of internal control procedures. The issues here are not complicated and there is no ambiguity in federal law governing publication of stigmatizing employee information.

### COUNT THREE-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. The allegations in paragraphs 1-47 are incorporated by reference as if restated in full.
55. Publishing stigmatizing information, in violation of the Constitution, and with reckless disregard of the truth, regarding the reasons for Washington's separation from State Street Bank & Trust Company, diminished his personal and professional respect, esteem, goodwill and deterred others from association and precluded any opportunity for future employment within the financial services industry.
56. Defendant's actions represented extreme and outrageous conduct.

### RELIEF REQUESTED

**WHEREFORE,** plaintiff respectively request that this Court:

---

[5] "Racial Discrimination is Still at Work in U.S." Wall Street Journal, September 4, 2003

15

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
KEITH D. WASHINGTON, PRO SE

**DEFENDANTS**
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ET AL

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
6265 MAGNOLIA RIDGE
STONE MOUNTAIN, GEORGIA 30087

Attorneys (If Known)
ATTORNEY GENERAL OF THE U.S.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

05-1069

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS - PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**TORTS - PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
FEDERAL TORT CLAIMS ACT "FTCA" 28 U.S.C. 1346(b)
Brief description of cause:
DEPRIVATION OF LIBERTY INTEREST WITHOUT DUE PROCESS OF LAW

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 25,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE WOODLOCK   DOCKET NUMBER 04-12141DPW

DATE: 03/07/2005
SIGNATURE OF ATTORNEY OF RECORD: [signature] KDWash, prose

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

APPENDIX C  LOCAL COVER SHEET

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) **Keith D. Washington v. EEOC et AL**

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.
        *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
**Keith D. Washington v. MCAD et AL  04-12141 DPW**

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES ☐   NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
   YES ☒   NO ☐
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   YES ☒   NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
   YES ☐   NO ☒

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
   YES ☐   NO ☒

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      EASTERN DIVISION ☒   CENTRAL DIVISION ☐   WESTERN DIVISION ☐

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      EASTERN DIVISION ☐   CENTRAL DIVISION ☐   WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Keith D. Washington
ADDRESS  6265 Magnolia Rdg.
         Stone Mountain, GA 30087-6070
TELEPHONE NO.  **770 465-4088**

(AppendixC.wpd - 11/27/00)