# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

KEITH D. WASHINGTON, *PRO SE*

        *Plaintiff*

       **V.**

(1)  *EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ('EEOC") in their official capacities;*

(2)  *CARI M. DOMINGUEZ, in her official capacity as Chair of the Equal Employment Opportunity Commission;*

(3)  *ROBERT L.SANDERS, in his individual and official capacity as, EEOC-Director Boston Area;*

(4)  *EDITH KESSLER, in her individual and official capacity as Investigator at EEOC-Boston,*
          **Defendants**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.: No. 05cv10619DPW**

**FIRST AMENDED COMPLIANT FOR:**

**(1)  DEPRIVATION OF LIBERTY AND THE PRIVILEGES AND IMMUNITIES OF UNITED STATES CITIZENSHIP IN VIOLATION OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUION;**

**(2)  VIOLATION OF THE EQUAL PROTECTION CLAUSE AND PRIVILEGES AND IMMUNITIES CLAUSE OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION;**

**(3)  VIOLATION OF U.S.C. SECTION 1981;**

**(4)  VIOLATION OF U.S.C.SECTION 1983;**

**(5)  NEGLIGENCE**

**(6)  PROMISSORY ESTOPPEL;**

**(7)  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(8)  NEGLIGENT MISRESPENTATION**

---

## COMPLIANT

*Plaintiff*, Keith D. Washington, alleges as follows:

## STATEMENT OF JURISDICTION

1. This action arises under the Fifth Amendment to the Constitution of the United States; the Civil Rights Act of April 9, 1866, 14 Stat. 27, currently codified at 42 U.S.C. section 1981; the Civil Rights Act of April 20,1871,Stat. 13, currently codified at 42 U.S.C. Sections 1983, 1985(3). Jurisdiction is based on 28 U.S.C. sections 1331, 1343, and 1367.

## JURISDICTIONAL PREQUISITIES

2. Federal Tort Claims Act ("FTCA")

   Through the enactment of the FTCA, the government has generally waived its sovereign immunity from tort liability for the negligent or wrongful acts or omissions of its agents who act within the scope of their employment.

3. Constitutional And State Law Violations

Plaintiff's claim under FTCA alleges conduct that violates the Constitution as well as laws of the Commonwealth of Massachusetts. [FDIC v. Meyer, 114 S. Ct. 996, 1001 (1994). Since publication of it's erroneous findings, Plaintiff, in his individual capacity, has filed multiple complaints with the EEOC in an effort to resolve this matter without litigation all unsuccessful. Plaintiff's administrative claim to EEOC, dated April 12, 2004, was denied in a letter dated September 9,2004, in a letter from Leonora L. Guarraia, Chief Operating Officer. Reconsideration of Washington's tort claim was again denied by letter dated December 7,2004. Instant compliant is filed within the six-month applicable period of both letters.

### HISTORICAL OVERVIEW OF THE CIRCUMSTANCES
### THAT PRECIPATED THIS SUIT

#### Plaintiff And Defendants

4. **Plaintiff**, a 58 year old, African American, United States Citizen, honorably discharged, highly decorated Vietnam combat veteran, with a 50-year impeccable personal and professional record, within the global financial services industry, is not a public figure and is currently a resident of Stone Mountain, Georgia. Plaintiff brings

this suit for restitution and repair of the injuries sustained by
him from the actions and inaction of agents of the Equal Employment
Opportunity Commission, part of the executive branch of the United
States Government, in connection with the investigation and
resolution of an employment discrimination compliant filed.

5. **Defendant,** Equal Employment Opportunity Commission [hereinafter
   referred to as "EEOC"] established under the Civil Rights Act
   of 1964, has five commissioners and a General Counsel
   appointed by the President and confirmed by the Senate.
   Commissioners are appointed for five-year, staggered terms.
   The term of the General Counsel is four years. The President
   designates a Chair and a Vice Chair. The Chair is the chief
   executive officer of the Commission. The five-member
   Commission makes equal opportunity policy and approves most
   litigation. Current Commission members are: Cari M. Dominguez,
   Chair; Naomi C. Earp; Vice Chair, Leslie E. Silverman, Commissioner;
   Stuart J. Ishimaru, Commissioner. The General Counsel is responsible
   for conducting EEOC enforcement litigation under Title VII of the
   Civil Rights Act of 1964 (Title VII), the Equal Pay Act (EPA), the
   Age Discrimination in Employment Act (ADEA), and the Americans
   with Disabilities Act (ADEA). The current General Counsel is
   Eric Dreiband. Pursuant to Hannah v. Larche, 363 U.S. 420
   (1960), the Commission makes no adjudications but acts solely
   as an investigative and fact-finding agency.

6. **Defendant**, The EEOC-Chair, Cari M. Dominquez, is sued in her
   official capacity, as chief executive officer of the EEOC, because
   her predecessor in office acted in a manner consistent with powers
   accruing to that office. In civil rights lawsuits, it is not the
   historical person, but the federal institution that is held
   responsible for the acts of government officials. Because the
   individual occupying the position of EEOC-Chair, failed to properly
   supervise employees of "EEOC", effectively, using the official power

of the position to propagate the constitutional violations and
empower a continuing pattern and practice of illegal employment
discrimination, the current incumbent, Chair, remains responsible
for the official acts carried out in the name of the EEOC, who is
also sued.

7. **Defendant**, Edith Kessler, [Hereinafter referred to as
"Investigator"] was at all times mentioned in this compliant
assigned to the Boston Office of EEOC and was the designated
investigator assigned to Charge # 16C973396, Washington v. State
Street Bank & Trust Company.

8. **Defendant,** Robert L. Sanders, [hereinafter referred to as "Manager"]
was at all times mentioned in this compliant Boston-Area Manger and
was the designated supervisor assigned to Charge # 16C973396,
Washington v. State Street Bank & Trust Company.

## BACKGROUD TO LITIGATION

9. On July 2,1992, Plaintiff was hired by State Street Bank & Trust
Company, ("State Street") as a vice president, in the Credit Risk
Policy Group, reporting to Howard H. Fairweather, Executive Vice
President, ("Fairweather").

10.    On July 2,1992, Plaintiff was hired, as a vice president, in the
Credit Risk Policy Group by Defendant, State Street Bank & Trust
Company, ("State Street"), reporting to Howard H. Fairweather,
Executive Vice President.

11.    Plaintiff was the only African-American senior manager in the
Credit Risk Policy Group.

12.    Plaintiff was assigned a pay grade statistically lower than that
of other professionals reporting directly to "Fairweather" and
inconsistent with "State Street" compensation guidelines as
documented in its employee manual, "Wavelength's" states *"Starting
Salaries- New employees are hired at a starting salary commensurate
with their experience, education, and other qualifications and
within the parameters of the established salary range for the
position."*

13.   As a result of the lower pay grade, Plaintiff's compensation,
      salary + bonus, was substantially less than other professionals
      reporting to "Fairweather" during the term of his employment.

14.   Wavelength's, provides as follows, "*Global Human Resources
      reviews salary ranges at least annually…Employees are paid at least
      the minimum of their [salary] range. Whenever salary ranges are
      adjusted upwards, employees with salaries below the new range
      minimum will have their salaries brought to the new level at the
      time of the change or at their annual review.*"

15.   Plaintiff's 1996 Performance Appraisal rated his performance as
      Outstanding, among the top 10% of all State Street officers with the
      following comments from his manager, H.F. Fairweather, Executive
      Vice President: "*KDW's persistent and calm manner has shown clear
      results in winning over line unit managers to his process oriented
      approach to Risk Management...His contribution is extremely
      valuable.*"

16.   'Wavelength's" on page 28, "*Merit Increases*" provides "*Through
      the merit program, outstanding performers are rewarded with
      significant increases.*" State Street" failed without explanation to
      provide a compensation increase notwithstanding Plaintiff's
      outstanding performance and the fact that executive management knew
      or should have known that his compensation was substantially lower
      than peers and inconsistent with the broad global scope of his
      responsibilities.

17.   Plaintiff was appointed Senior Vice President on April 11,1996,
      by the Executive Committee of the "State Street" Board of Directors,
      with Risk Management Oversight responsibility for +90% of the bank's
      global activities.

18.   'Wavelength's" on page 28, "*Promotional Increases*" provides "*In
      the event of a promotion, your salary may be increased based on
      performance and position in the new range…If your salary is below
      the minimum of the new salary range, the salary will be brought to
      the minimum.*"

19.   State Street" failed without explanation to provide a
      compensation increase notwithstanding Plaintiff's senior management

appointment and the fact that executive management knew or should
have known that his compensation was substantially lower than peers
and inconsistent with the broad global scope of his
responsibilities.

20.   Plaintiff was placed on unpaid leave, by email,
   "

On August 15,1996, as a result of administrative lapses regarding
expense accounting.

21.   Upon his return from a long planned 2-week vacation which
   included dropping his daughter off for her freshman year at Spellman
   College, Atlanta, Ga., Plaintiff submitted his letter of resignation
   to "Fairweather" during dinner at a local Chestnut Hill restaurant,
   (Ground Round) on/or about September 9,1996.

22.   Fairweather **declined to accept the letter of resignation** and
   proposed looking into having the bank provide an executive loan[1],
   $100,000.00, to relieve short-term cash flow problems, caused by
   Plaintiff having to maintain two homes, pay his daughter's college
   tuition, keep his son in private school and provide support for his
   elderly parents who lived with him on Long Island.

23.   On September 12, 1996 the request for an executive loan was
   formalized and fully documented in a letter to Fairweather, which
   clearly summarized the specific causes of my financial difficulties
   and the source of loan payback.

24.   On/or about October 1, 1996, "State Street" hired Arthur G.
   Lloyd, ("Lloyd"), Control Risk Group, Iselin, NJ, to investigate
   Plaintiff's financial records.

25.   On October 2, 1996, "Lloyd" requested and was furnished, by fax,
   all available copies of bank and credit card statements from 11/4/95
   through 8/96.

26.   "Lloyd" questioned only two entries, a $20,465.29 deposit (after
   tax bonus payment) and a $10,000.00 withdrawal used to refinance my
   mortgage.

---

[1] Standard operating procedure for relocating senior executives

27.   The results of "Lloyds" findings were never discussed and/or shared with Plaintiff.

28.   "State Street" declined to provide the executive loan and on October 8,1996, Howard H. Fairweather, Executive Vice President, **over dinner** at Logan Airport, Boston, advised Plaintiff that his resignation would be accepted. The date October 9, 1996 was written in the resignation letter previously submitted to Fairweather and initialed by Plaintiff.

29.   According to Fairweather[2], resignation was by "**mutual agreement**".

30.   Fairweather provided Plaintiff with a written contract to memorialize the terms of his **no-fault termination** on the business card of Nancy Savage, Vice President/Human Resources which clearly spelled out the specific terms of separation as follows: (1) Separation by "mutual agreement"; (2) to be paid through October 8,1996 plus 13 days of accrued but unused vacation; (3) unemployment compensation under M.G.L. 151A would be paid. Plaintiff's final unequal paycheck was received on/or about **October 8,1996.**

31.   On or about October 12, 1996 Washington's resignation for "**personal reasons**" was announced throughout the bank, by memo from Fairweather.

32.   Shortly after his resignation Washington advised MN Carter, Chief Executive Officer of "State Street", a close professional colleague of over 20 years that he was suffering from stress and felt burned out.

33.   State Street Bank & Trust Company paid unemployment compensation pursuant to M.G.L. 151A for 26 weeks, totaling $16,900.00.

34.   The payment of Unemployment Compensation pursuant to M.G.L. 151A precludes after-the-fact allegations misconduct based on the same set of facts. *Martin v. Ring, 401 Mass. 59, 61 (1987)"* quoting *Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 395 Mass. 366, 372(1985).* The judicial doctrine of collateral estoppel provides that "[w] hen an issue of fact or law is actually litigated

---

[2]As an executive officer and member of the management committee, Fairweather is clearly a corporate proxy.

and determined valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in subsequent action between the parties, whether on the same or a different claim. Id at 62, quoting *Fidler v. E.M. Parker Co., 394 Mass. 534, 541 (1985).* "The doctrine may be applied with respect to *administrative agency determinations* so long as the tribunal rendering judgment has the legal authority to adjudicate the dispute. "the guiding principle in determining whether to allow defensive use of collateral estoppel is whether the party against whom it is asserted "lacked full and fair opportunity to litigated the issue in the first action or [whether] other circumstances justify affording an opportunity to relitigate the issue." Plaintiff alleges the criteria established by this court have been met by the payment of unemployment compensation. *Patriot Cinema, Inc v. General Cinema Corp. 834 F. 2d. (1997)*, ".. . if parties feel free to select contradictory positions before different tribunals to suit their ends, the integrity and efficacy of the courts will suffer." *Commissioner of the Dept. of Employment & Training v. Dugan, 428 Mass. 138, 143 (1998)* "In some cases, even if the overlap may be so substantial that preclusion is plainly appropriate." Plaintiff asserts for the purpose of preclusion, the issues regarding his separation have been resolved by the administrative judge and are identical to the issues raised in support of his discrimination claim.

35.  The interpretation of a written contract's terms is a question of law, not fact, and is susceptible to determination at summary judgment. *Lexington Ins. Co. 419 Mass. At 713.*

   **a.** Plaintiff's *no-fault termination* as an at-will employee has been memorialized in a written contract, the authenticity of which has not been disputed, is a matter of law not fact.

   **b.** "Wavelength's" created his contractual entitlement to severance and bridge pay as a matter of law not fact. Under Massachusetts's law as determined by the state's highest court, "On proper proof a personnel manual can be shown to form the basis of an express or implied contract." *Jackson, 403 Mass. At 13.* In O'Brien v.

New England Telephone & Telegraph Company, 422 Mass. 686, 691,
664 N.E. 2d 843 (1996), the SJC set out to clarify the standard
by which to determine whether an employment manual serves, either
expressly or impliedly, as a contract. The O'Brien Court framed
its discussion with an observation: "The idea that an employer
may ignore promises made in a personnel manual is in increasing
disfavor in this country." *O'Brien, 422 Mass. at 691.* The Court
then reinforced the central holding of its earlier Jackson case:
A personnel manual may form the basis of an express contract,
where the parties agree that a personnel manual will spell out
the relative rights and obligations of employer and employee; or
its terms may be part of an implied contract. While an employer
might deny expressly agreeing to contractual obligations, where
its conduct is in conformity with procedures set forth in its own
manual, an implied-in-fact contract may exist. *Id at 692.* The
O'Brien Court then debunked certain notions that have developed
in state and federal court after the Jackson decision. The SJC
indicated that an absence of contract negotiations does not
foreclose the possibility that a contract exist, nor does a
boiler plate disclaimer with respect to the binding nature of the
document.  The fact that an employee is not asked to sign the
manual and acknowledge its receipt is not dispositive.  Finally,
even an employer's express disclaimer may not be sufficient to
erase contractual obligations stemming from an employment manual.
Although there is no requirement in the Fair labor Standards Act
(FLSA) for severance pay, Plaintiff asserts State Street Bank &
Trust Company's employee manual "Wavelength's created a binding
implied contractual relationship.

36.   During November 1996, Washington contacted MN Carter, CEO,
      requesting an executive severance package[3] consistent with his
      position as a senior vice president.

_____

[3] Severance/bridge pay are part of the terms and conditions of employment at
"State Street" pursuant to its employee manual "Wavelengths"

37.  As a senior vice president Plaintiff was entitled to severance
     benefits as follows: (1) two years salary + bonuses; (2) accelerated
     vesting of stock options; (3) two years continued health care.

38.  In clear violation of clearly established law, *Hishon v. King &
     Spaulding, 467 U.S. 69 :*"Once a contractual employment relationship
     is established, the provisions of Title VII attach, forbidding
     unlawful discrimination as to the "terms, conditions, or privileges
     of employment," which clearly include severance benefits that are
     part of the employment contract. In a letter dated and mailed on
     **January 6,1997**, Plaintiff's request for severance was denied as
     follows, State Street "*shall not entertain severance compensation to
     you*…" with a copy to John Towers, State Street General Counsel.

39.  During July 1997, Plaintiff was diagnosed as suffering from
     severe depression and posttraumatic stress disorder, a direct result
     of his work experience at "State Street" by a physician
     independently selected by his wife's HMO, Aetna, and was encouraged
     to apply for disability benefits, Social Security Disability and
     Veterans Disability Benefits.

40.  On July 25, 1997 Washington filed joint discrimination complaints
     as follows" (1) EEOC #97-BEM-3045 and (2) EEOC Charge # 16C973396
     based on a continuing pattern of race/age based discrimination
     culminating with the denial of severance benefits on/or about
     January 6,1997 and violations under Americans with Disabilities Act.

41.  State Street Bank & Trust Company had the right to terminate
     Plaintiff's at-will employment at any time and for no reason,
     however they must be held fully liable as a matter of law, for
     destroying Plaintiff's well documented outstanding personal and
     professional reputation based on innuendo, self-serving speculative
     assertions or unsupported conclusory statements made after he has
     engaged in activities protected under MGL 151B, Sec 4, P.1, 1B, 4, &
     16, Title VII: ADEA, and ADA. The broad, overriding interest, shared
     by employer, employee, and consumer, is efficient and trustworthy
     workmanship assured through fair and racially neutral employment and
     personnel decisions. In the implementation of such decisions, it is
     abundantly clear that MGL 151B and Title VII tolerates no racial

FIRST AMENDED COMPLIANT - 10

discrimination, subtle or otherwise. In this case Plaintiff, charges that he was subject to a "hostile work environment" resulting from a ongoing pattern of unequal compensation cumulating in denial of severance and bridge pay, upon his *no-fault* termination, "because of his race and color." Respondent, State Street Bank & Trust Company, denied discrimination of any kind, asserting that its failure to provide severance and bridge pay was based upon and justified by his participation in unlawful conduct against it and that Plaintiff's claims were barred by statue of limitations. The complainant in MGL 151B and a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he was qualified for his job; (iii) that, despite his qualifications, he was subject to a pattern of unequal compensation and denied severance & bridge pay; and (iv) that, the justification for rejection, was pretextual. Using the McDonnell Douglas Corp v. Green, 411 U.S. 792, 802-05 (1973), framework Plaintiff assets he is entitled to summary judgment against State Street Bank & Trust Company for intentional illegal discrimination and mental health injuries resulting from intentional illegal discrimination in violation of Title VII. Plaintiff's resignation represented a refusal to continue to facilitate "State Street's" illegal discriminatory practices, which resulted in humiliation and stigmatization that created a formidable barrier to his full workplace participation.

**Stage I:** It is undisputed that Plaintiff, a 58-year old African-American, is in class protected by, Title VII and ADEA.
**Stage II:** Irrefutable, dispositive documentary evidence clearly establish Plaintiff to be a highly qualified individual.
 **Stage III:** Section 703 (a) (1) of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 (a) (1), in pertinent part provides:
"It shall be an unlawful employment practice for an employer . .
. to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . .."

42. Plaintiff's entitlement to severance bridge pay is a matter of law not fact, which makes the, January 7, 1997 justification for rejecting Plaintiff's request for severance and bridge pay consistent with his position as senior vice president pretextual and the sort of continuing discrimination prohibited by 703 (a) (1). Under *Bazemore*[4], Plaintiff has met his burden of proof under Title VII and ADEA, in establishing at least one intentional illegal discriminatory act within the limitations period, accordingly all alleged acts of unequal compensation, resulting in a hostile work environment, dating back to Plaintiff's original wage classification in July 1992, are subject to challenge.

43. In response to Plaintiff's complaint filed with MCAD Patricia A. Granger, Esq. in her capacity as counsel for State Street Bank & Trust Company, submitted information, she knew or should have known to be materially false and defamatory regarding the terms and timing of Plaintiffs no-fault termination as an at will employee.

44. On/or about September 30, 1997, in response to Plaintiff's complaint filed with EEOC, Mary E. O'Neal, Esq. in her capacity as outside counsel for State Street Bank & Trust Company, in violation of *18 U.S.C. 1001*, knowingly and willfully submitted "Respondents Motion To Dismiss" due to lack of jurisdiction based on untimely filing using the August 15, 1996 email as the trigger date for statue of limitations purposes, which she knew to be materially false.

45. In response to Plaintiff's claim for workers compensation benefits[5] filed with Liberty Mutual Insurance Company, after closed-door private discussions with John Towers, SVP/General Counsel of State Street Bank & Trust Co Jean M. Shea, Esq., in her capacity as

---

[4] Bazemore v. Friday, 478 U.S. 385 (1986): "[e]ach week's paycheck that delivers less to a black [person] than to a similarly situated white [person] is a wrong actionable under Title VII.."
[5] Due State Street Bank & Trust Company as Sponsor fro the Short/Long Term Disability Plans, failure to provide information, petitioner was under the false impression he was filing for Short Term Disability benefits.

counsel for Liberty Mutual Insurance Company, administrator for
State Street Bank & Trust Company's workers compensation plan, made
defamatory and false statements regarding the terms of Plaintiffs
no-fault termination as an at will employee.

46.    On or about December 17,1967, after preliminary screening by
MCAD's Mary C. Garippo, investigator, Katherine M. Martin, Esq.,
supervisor and Douglas T. Schwartz, Investigating Commissioner,
which relied exclusively on the hotly disputed pleadings of State
Street Bank & Trust Company outside counsel, Patricia A. Granger,
Esq., and the email of August 15,1996 concluded as follows:
"*Your compliant was not timely filed with the Commission. Because it
was filed outside the time limit prescribed by law, the Commission
cannot investigate your allegations.*"

47.    Operating under the color of state law in violation of 42 U.S.C.
1983, MCAD, Mary C. Garippo, investigator, Katherine M. Martin,
Esq., supervisor and Douglas T. Schwartz, Investigating
Commissioner[6], violated Plaintiff's constitutional right's to due
process, under the Fourteenth Amendment by depriving him of "liberty
interest" by publishing on/or about December 17,1967, the following
hotly disputed stigmatizing information;

"*After discovery of Complaint's improprieties of the Respondent's
money, Respondent gave Compliant the option of resignation or
termination.*" This hotly disputed stigmatizing information was
published as fact, in clear violation of well established law as
determined by the U.S. Supreme Court[7], based exclusively on counsel
pleadings[8], without: (1) deposition and/or live testimony, (2)
providing a name clearing hearing, (3) providing a list of evidence
against him or, (3) providing any opportunity to challenge his

---

[6] Legal action has been filed against MCAD and certain individuals for
violations under 42U.S.C. 1983, docketed as 04-12141DPW; Charles M. Wyzanski,
Assistant A.G Commonwealth of Massachusetts, represents all Defendants'.
[7] Board of Regents v Roth, 408 U.S. 564, 573 (1972); Wisconsin v.
Constantineau, 400 U.S. 433, 437; Goldberg v Kelly 397 U.S. 254.
[8] Pursuant to G.L.M. Chapter 231, Section 87: " In any civil action pleadings
shall not be evidence on the trial, but allegations therein shall bind the
party making them.

accusers through cross examination pursuant to the Sixth Amendment.
Relying exclusively on the hotly disputed pleadings of State Street
Bank & Trust Company outside counsel, Patricia A. Granger, Esq., and
the email of August 15,1996 MCAD, concluded as follows:

 *"Your compliant was not timely filed with the Commission. Because*
 *it was filed outside the time limit prescribed by law, the*
 *Commission cannot investigate your allegations."*

48. "Right to Sue Letter" issued.

49. Plaintiff asserts, State Street Bank & Trust Company's fraudulent
 misrepresentations, toll all statue of limitations on his MCAD
 compliant.

50. Based on a Work Sharing Agreement with MCAD, on/or about November
 24,1967, EEOC-Area Director, Robert L. Sanders, confirmed
 Plaintiff's compliant was filed on 7/25/97. He further stated, *"… we*
 *suspended processing pending MCAD's issuance of a final finding."*

51. Without benefit of independent investigation, based exclusively
 on counsel pleadings[9] and MCAD findings published on/or about June
 4,1998, the following hotly disputed stigmatizing information;
  *"… Respondent's demand that you repay money you improperly*
  *appropriated…Respondent had no obligation to extend benefits*
  *especially to someone whose resignation was requested because of*
  *misappropriation of funds."*

52. This hotly disputed stigmatizing information, which represented
 quasi-adjudication, was published as fact, in clear violation of
 well-established law as determined by the U.S. Supreme Court.

53. Plaintiff alleged that, State Street Bank & Trust Company engaged
 in a continuing pattern and practice of discriminating against him,
 in terms of compensation and other "privileges and benefits" of
 employment, which created a "hostile work" environment. The EEOC
 compliant filed approximately 199 days after he received
 notification that he would not receive severance pay, a contractual

---

[9] Pursuant to G.L.M. Chapter 231, Section 87: " In any civil action pleadings
shall not be evidence on the trial, but allegations therein shall bind the
party making them.

benefit of employment, consistent with his position as a senior vice
president, an illegal discriminatory employment practice.

54.  On June 4, 1998, Robert L. Saunders, Area Director, notified
     Washington as follows:

     ❑ *"We cannot investigate your charge because it was not filed
        within the time limit required by law."*

     ❑ *Notification of Right to Sue*

55.  Plaintiff's ADA claim was based allegations of improper
     interference with his claim for disability benefits by State Street
     Bank & Trust Company employees after he applied for disability
     benefits during July 1977. Specifically the failure to provide
     accurate information regarding:

     **a.** Entitlement to benefits for, stress related disorders reported
        October 1996, under the State Street Bank & Trust Company
        (ERISA) Short/Long Term Disability,

     **b.** Applying for benefits for, stress related disorders reported
        October 1996, under the State Street Bank & Trust Company
        (ERISA) Short/Long Term Disability,

     **c.** Intentionally withholding from the Plan Administrator material
        information regarding a work environment heavily polluted with
        discrimination and pattern and practice of unequal
        discriminatory compensation,

     **d.** Failing to disclose that executive management regarded
        Plaintiff as disabled,

     **e.** Materially misrepresenting the terms and conditions of
        Plaintiffs separation with fraudulent intent.

     **f.** Causing its agent, Prudential Insurance not to independently
        investigate his application for ERISA disability benefits.

56.  A reasonable jury could find emails sent to Plaintiff immediately
     after his resignation, from senior State Street executives who
     worked very closely with him and the failure to file criminal
     charges for the very serious state and federal allegations made to
     MCAD and EEOC, of "misapplication of bank funds" and elected to pay
     unemployment compensation under M.G.L. 151A, could reasonably
     conclude he was regarded as disabled. Under the "discovery rule" the

limitation period for Plaintiff's ADA claim could not be triggered until **July 1997,** the earliest he could reasonably be expected to have sufficient notice of each element of his cause of action: (1) he was regarded as disabled by State Street; (2) his severe psychological disability and proximate the cause of the disability; (3) illegal interference through material misrepresentations and withholding of dispositive information by State Street employees and/or agents to defeat his claim for employment related benefits. *Bowen v. Eli Lily & Co. 408 Mass. 204, 208 (1990).*

57.   Among Plaintiff's claims is that the discriminatory conditions at State Street created a hostile work environment, which caused Petitioner's severe depression and PTSD. *Civil Right's Act of 1991* established the *legislative* decision to permit jury trials in **_Title VII cases emphasizes that the jury_** ...*not the judge*... serve as the final decision-maker regarding factual disputes' and credibility determinations before the court. The Court in *Doty v. Sewall, 908 F.2d (1990),* found ".. . if an appellant has preexisting emotional difficulties and mental health deteriorates as a result of discriminatory conduct, the additional harm may be attributed to the defendant." *W. Page Keeton et al, Preston and Keeton on the Law of Torts sec. 43 at 291-92 (5th ed. 1984).* This case is essentially a parallel to the classic textbook example of a plaintiff with an eggshell skull, where the tortfeasor must take the injured party as he finds him, and is liable for the full extent of the harm caused by its negligence, even if a "more normal plaintiff" would not have suffered nearly as much.

58.   **Plaintiff's ADA claim was timely filed**.

59.   Since publication of their findings, Plaintiff has written numerous letters to EEOC informing them of the falsity of their 1998 Memorandum and provided dispositive proof thereof. In response EEOC has, (1) stood by it's findings; (2) re-affirmed its support for its findings; and (3) denied any liability for publishing defamatory statements, (4) alleged immunity from civil suit pursuant to *Hannah v. Larche 363 U.S. 420 (1960).* By acting in this manner EEOC and

defendants herein engaged in negligent, irresponsible and libelous conduct to the harm and detriment of "Washington", and EEOC further ratified and encouraged the fraudulent and retaliatory conduct of State Street Bank & Trust Company and counsel.

**DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

60. EEOC without benefit of depositions, answers to interrogatories, admissions on file, affidavits, live testimony or oral argument, although multiple material facts were in dispute, published stigmatizing information regarding the reasons for Plaintiff's involuntary separation from State Street Bank & Trust Company, which is disputed.

61. The United States Supreme Court has affirmed "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau, 400 U.S. 433, 437.*

62. EEOC's conduct violated Plaintiff's constitutional right to name-clearing hearing:
    a. As early as 1972, in *Board of Regents v. Roth, 408 U.S. 564, 573(1972)*, the United States Supreme Court established that a terminated employee has a constitutional based liberty interest in clearing his name when stigmatizing information regarding the reasons for termination is publicly disclosed. Failure to provide a "name-clearing" hearing in such a circumstance is a violation of the …. due process clause.
    b. Publication of stigmatizing information in this case occurred when EEOC published it's memorandum and findings, accepting hotly disputed allegations by counsel for State Street Bank & Trust Company, *made only after the compliant was filed*, as fact.

63. It is reasonable to expect that EEOC should have been aware that publishing stigmatizing information is unlawful absent a name-clearing hearing.

64. Preexisting federal law as determined by the Supreme Court provided EEOC with fair warning that it's conduct was unlawful, EEOC

findings dated December 17,1997. *Roth,* decided in 1972, gave "fair warning" that an employee's liberty interest is implicated if a charge of improper conduct impairs the employee's reputation for honesty or morality. "The procedural protections of due process apply if [as in this case] the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment….

65.   Defendants acknowledge declining to investigate Plaintiff's complaints, yet publish unsupported findings, which alleged, "..***After discovery of Complaint's improprieties of respondent's money, Respondent gave Compliant the option of resignation or termination.*** .." Defendants should have become highly suspicious since the hotly disputed allegations were for a serious criminal act, no criminal compliant was filed, and Plaintiff was fully paid 26-weeks or $16,900.00 in unemployment compensation in accordance with M.G.L. 151B.

66.   EEOC knew or should have known that since its findings were subject to full public disclosure, the procedural protections of due process applied.

67.   EEOC failed to adequately train and supervise employees responsible for the investigation of discrimination complaints.

68.   Defendants negligently deprived Plaintiff of his constitutionally guaranteed "liberty" and right to privacy by allowing persons it knew or should have known to be unqualified to conduct discrimination investigations in a competent manner.

69.   Defendants placed Plaintiff at an unjustifiably high risk of harm as a result of a continuing pattern and practice of employment discrimination by State Street Bank & Trust Company. Defendants, with deliberate indifference and on the basis of race, failed to protect Plaintiff from repeated violations of Massachusetts's civil rights violations, failed to equally enforce the laws and branded Plaintiff with the racial badges of inferiority and slavery in the form of being labeled as a thief, based solely on the disputed pleadings of counsel for State Street Bank & Trust Company,

exacerbated the illegal discriminatory action and led to further
wrongs against Plaintiff.

70.   Defendants failed to meaningfully investigate and act upon
discrimination complaints filed by Plaintiff on the basis of race.
Defendants under-investigated, mishandled and failed to protect
Plaintiff from a series of illegal discriminatory acts or take
appropriate legal action against those responsible for such acts,
even when provided with dispositive proof of the illegal
discriminatory actions. Defendants abdicated their responsibility to
investigate, develop and charge employees and/or agents of State
Street Bank & Trust Company with workplace discrimination, thereby
ratifying and jointly participating in racially motivated acts to
deprive Plaintiff of his constitutional and statutory rights.
Defendants made decisions on a racially discriminatory basis.

71.   Defendants conspired together and acted in concert with one
another through; even after highly credible documentary evidence
supporting Plaintiff's compliant was submitted.

72.   Defendants knew or should have known that their published
findings would seriously impair Plaintiff's outstanding reputation
for honesty and morality among family, friends and within the global
financial services industry where he has worked in positions of
increasing responsibility for +30 years, with the expected adverse
financial consequences.

**Plaintiff is Entitled to Equitable Tolling [28 U.S.C. 2401(a)**
The rationale for the judge-made doctrine of equitable tolling is to
protect laypersons from the harsh consequences of strict application
of procedural requirements. This is especially true for laypersons
that seek redress for unlawful civil rights violations. A number of
circuits have concluded that mental illness can justify equitable
tolling. In Irwin v Department of Veterans Affairs, 498 U.S. 89
(1990), the Supreme Court held that there is a rebuttable presumption
that all federal statues of limitations contain an implied equitable
tolling provision. A careful study of Supreme Court precedent, as well
as that of the regional circuits, reveals that equitable tolling is

available in a variety of circumstances including when a party has
been mentally incapacitated. While the Supreme Court has yet to
specifically address whether mental illness can justify equitable
tolling, in *Irwin*, an employment discrimination case, petitioner
claimed that the 30-day period prescribed in 42 U.S.C. section 2000e-
16( c) should be tolled because his attorney was out of the country
and did not, therefore personally receive the relevant notice. *498
U.S. at 91.* That case recognized that equitable tolling applied in
suits against the government, but did not discuss the availability of
tolling based on mental illness. *Id at 95-96.* Subsequently, *United
States v. Brockamp, 519 U.S. 347 (1997),* a tax refund case, was
decided. In Brockamp, the Ninth Circuit had determined that
petitioners who suffered from alcoholism and senility, were entitled
to equitable tolling of 36 U.S.C. section 6511. *519 U.S. at 319.*
Although the Supreme Court concluded that section 6511 should not be
subject to equitable tolling because the Irwin presumption had been
rebutted, it said that **"[mental disability], we assume, would permit a
court to toll the statutory limitations period."***Id at 348.* Therefore,
the Court has intimated that tolling based on mental incapacity is
allowed. More recently, it decided *Young v. United States, 535 U.S.*
43 (2002), a bankruptcy case that involved whether 11 U.S.C. section
507(a)(8)(A)(i)'s lookback period could be tolled during the pendency
of a prior bankruptcy petition. The Court noted that equitable tolling
has been widely permitted in the two situations acknowledged in *Irwin*,
supra, and its progeny. *Young, 535 U.S.at 50.* Significantly, and of
critical importance to the outcome of *Young,* the Supreme Court said,
"*We have acknowledged, however, that tolling might be appropriate in
other cases, and this we believe is one.*" Id. (citations omitted).
Equitable tolling of federal statues of limitations is therefore
available in more than the two circumstances described in *Irwin* and
Bailey. See *Nunnally v. MacCausland, 996 F. 2d 1, 5 n.7 (1st Cir.
1993).* ("*A fair reading of Irwin, however, shows that the Court did
not undertake an exhaustive list of factors that may be considered in
the equitable weighing process.*"). In addition to the guidance provide
by the Supreme Court, several circuits have allowed equitable tolling

based on mental illness. This circuit has established that mental incapacity is a suitable basis on which to equitably toll a statue of limitations. See *Melendez-Arroyo v. Culter-Hammer DE P.R., Co., 273 F.3d 30, 39 (1ˢᵗ Cir. 2001)* (the mental illness must have been "so severe that the plaintiff was [un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel." Remanding for factual inquiry into whether plaintiffs mental state warranted equitable tolling); *Nunally, 996 F. 2d at 5* (holding that 5 U.S.C. section 7703(b)(2) can be tolled due to mental incapacity); *Oropallo v. United States, 994 F. 2d 25, 28 n. 2 (1ˢᵗ Cir. 1993)*(holding that 26 U.S.C. section 6511 may not be equitably tolled, but that mental incapacity is grounds for tolling when available.). The Second, Sixth, Seventh, Ninth and D.C. Circuits have held the same in a variety of circumstances. See *Zerilli-Edelglass v. New York City Transit Auth., 333 F. 3d 74, 80 (2d Cir. 2003)* ("Equitable tolling is generally considered appropriate where… a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion.") (citations omitted); *Chapman v. Choicecare Long Island Term Disability Plan, 288 F. 3d 506, 514 (2d Cir. 2002)*(recognizing mental incapacity as a basis for equitable tolling under ERISA); *Brown v. Parkchester S. Condos., 287 F. 3d 58, 60 (2d Cir. 2002)* (Title VII case finding that plaintiff proffered sufficient evidence to warrant a hearing on whether her mental incapacity required tolling); *Boos v Runyon, 201 F. 3d 178, 184 (2d Cir. 2000)*(holding that 29C.F.R. section 1614.105(a)(1) is subject to equitable tolling based on mental illness); *Canales v Sullivan, 936 F. 2d 755, 756 (2d Cir. 1991)*(holding that 42 U.S.C. section 405(g) may be equitably tolled based on a plaintiff's mental impairment); *Cantrell v Knoxville Cmty. Dev. Corp., 60 F. 3d 1177, 1180 (6ᵗʰ Cir. 1995)*(holding that attorney's mental illness may justify equitable tolling); *Miller v. Runyon 77 F.3d 189, 191 (7ᵗʰ Cir. 1996)*(finding that 29 U.S.C. section 791 may be tolled "if the plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time"); *Stoll v Runyon, 165 F. 3d 1238, 1242 (9ᵗʰ Cir. 1999)*(holding

that mental incapacity is an extraordinary circumstance that may warrant equitable tolling); *Smith-Hayne v Dist. of Columbia, 155 F 3d 575, 579 (D.C. Cir. 1998)* (holding that the doctrine of equitable tolling "can fairly be read to encompass cases where a plaintiff has been unable to [timely file] because of disability"). The Third Circuit has allowed equitable tolling based on mental illness, but has limited its application. In Lake v Arnold, 232 F 3d 360, 364 (3d Cir. 2000), a mentally retarded women sued her family and physicians for having sterilized her without her consent. She filed her 42 U.S.C. section 1983 and 1985 claims outside the applicable two-year statue of limitations. Id. The court determined that the statue of limitations could be tolled because the incompetence that caused the delay also "motivated to some degree, the injury that [s]he sought to remedy." Id at 371.

**Equitable Tolling Is Warranted Under First Circuit Guidelines**

73. Plaintiff has not been represented by counsel during the relevant filing period, he has not sat on his rights, the documented severity of his mental disability resulted in plaintiff's inability to engage in rationale thought and deliberate decision-making, necessary to pursue his claim alone, EEOC has improperly alleged immunity.

## FIRST CAUSE OF ACTION
## FOR DEPRIVATION OF LIBERTY AND THE PRIVILEGES
## AND IMMUNITIES OF UNITED STATES CITIZENSHIP
## IN VIOLATION OF THE FOURTEENTH AMENDMENT
## OF THE UNITED STATES CONSTITUTION
### (AGAINST ALL DEFENDANTS)

74. Plaintiff repeats and re-alleges the above allegations, as if fully set forth herein.

75. Publication of this hotly disputed statement by Defendant's without prior notice and/or providing any opportunity to be heard, deprived Plaintiff of his constitutionally protected interest in "liberty" and enjoying the privileges and immunities of his United States citizenship.

76. This action by the government investigative agency, specifically charged with protecting civil rights, shocks the conscience, and

demonstrate a deliberate indifference to constitutionally guaranteed "liberty interest."

## SECOND CAUSE OF ACTION
## VIOLATION OF THE EQUAL PROTECTION CLAUSE
## AND PRIVILEGES AND IMMUNITIES CLAUSE OF THE
## FIFTH AMENDMENT OF THE U.S. CONSTITUTION
## (AGANIST ALL DEFENDANTS)

77. Plaintiff repeats and re-alleges the above allegations, as if fully set forth herein.

78. Publication of the hotly disputed statement by Defendant's, which establishes Plaintiff's guilt, based on unsupported allegations, for a serious criminal offense under both the laws of the Commonwealth of Massachusetts and the laws of the United States, without an indictment by either state or federal grand jury or even a criminal compliant being filed, deprived Plaintiff of his constitutionally guaranteed right to "equal protection" and enjoying the privileges and immunities of his United States citizenship, under the Fifth Amendment of the United States Constitution.

79. This action by the government investigative agency, specifically charged with protecting civil rights, shocks the conscience, and demonstrates a deliberate indifference to constitutionally guaranteed equal protection rights.

80. Defendants did not treat white citizens in the same or similar manner to Plaintiff.

81. As a consequence, Plaintiff has sustained injuries in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## VIOLATION OF U.S.C. SECTION 1981
## (AGANIST ALL DEFENDANTS)

82. Plaintiff repeats and re-alleges the above allegations, as if fully set forth herein.

83. Defendants deprived Plaintiff of his "full and equal benefit of all laws and proceedings for the protection of "liberty interest" as is enjoyed by white citizens of the Commonwealth of Massachusetts, in violation of 42 U.S.C. section 1981, including specifically section 1981(a).

84. Defendants, with deliberate indifference and on the basis of race, failed to protect Plaintiff from ongoing civil rights violations and retaliation by employees and agents of State Street Bank & Trust Company, failed to equally enforce the laws and branded Plaintiff as a thief, based on unsupported allegations.

85. Defendants' failure to aid in preventing the commission of race based discriminatory conduct by employees and agents of State Street Bank & Trust Company exacerbated the illegal discriminatory conduct and led to further wrongs against Plaintiff.

86. Defendants did not treat white citizens in the same or similar manner to Plaintiff.

87. As a consequence, Plaintiff has sustained injuries in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### VIOLATION OF U.S.C.SECTION 1983
### (AGANIST ALL DEFENDANTS)

88. Plaintiff repeats and re-alleges the above allegations, as if fully set forth herein.

89. Defendants conspired to deprive Plaintiff of the equal protection of the laws and equal privileges and immunities under the laws, thereby injuring Plaintiff.

90. In furtherance of this conspiracy, Defendants, ignored Plaintiffs request to be heard, accepted as fact the self-serving pleadings of state Street, refused to review dispositive documentary evidence supporting Plaint's compliant and clearly establishing fraudulent misrepresentation by employees and agents of State Street Bank & Trust Company.

91. Plaintiff was deprived of his federal rights under Title VII, ADEA and ADA, pursuant to Defendants policy and practice of accepting the investigative results of MCAD and pleadings of State Street as fact. This policy and practice was adopted with reckless or callous indifference to Plaintiff's federally protected rights, and causally connected to violations of federal law described below.

92. By accepting MCAD flawed investigative findings as fact, Defendants permitted Plaintiff to be deprived of his "liberty

interest" with deliberate indifference and on the basis of race, failed to protect Plaintiff from repeated criminal acts and failed to equally enforce the laws. Defendants' failure to prevent or aid in preventing the commission of illegal employment discrimination by State Street, exacerbated the problem and led to further wrongs against Plaintiff.

93.  Defendants further falsely alleged, "*the investigative file has been destroyed*", when in fact, Plaintiff, who was never interviewed, is aware that no investigation occurred and EEOC-Boston, relied exclusively on the findings of MCAD and pleadings of counsel for State Street.

94.  Defendants did not treat white citizens in the same or similar manner to Plaintiff.

95.  As a result of the conspiracy between Defendants, Plaintiff has sustained injury in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### NEGLIGENCE
#### (EQUAL EMPLOYMENT OPPORTUNITY COMMISSION)

96.  Plaintiff repeats and re-alleges the above allegations, as if fully set forth herein.

97.  Defendant, EEOC, failed to adequately train and supervise those persons hired to investigate discrimination complaints. Defendant, EEOC, breached its duty of care to Plaintiff by, relying on the findings of MCAD, pleadings of counsel for State Street, failing to adequately train and supervise the Investigator and Area Manager, who published as fact, unsupported and hotly disputed stigmatizing information, specifically:

  a. The Investigator failed to independently verify the veracity of disputed pleadings by counsel for State Street

  b. The Investigator failed to develop corroboration to support the disputed findings of MCAD and pleadings of State Street.

c. Area Manager failed to independently scrutinize the methodology used by Investigator, which resulted in the disputed findings.

d. The failure of Area Manager to implement a vetting process capable of dealing effectively with the disputed issues in the initial screening process.

e. Investigator and Area Manager failed to consider fraudulent concealment of material information by State Street. As has ultimately been revealed as a result of the tenacity and persistence of Plaintiff in assembling dispositive documentary evidence to support his claims, this fraud was simple to perpetrate and even easier to discover, had the gatekeepers, Massachusetts Commission Against Discrimination, "MCAD", Equal Employment Opportunity Commission, "EEOC", and the United States District Court[10]- not averted their eyes and abdicated their clearly defined legal responsibilities, accepting as fact the self-serving unsupported allegations of State Street Bank & Trust Company. The scope and audacity of the fraud could not have succeeded to the extent it has to-date without the gross negligence of, MCAD, EEOC and abuse of discretion by the district court in accepting as fact, with reckless disregard, the pleadings of State Street Bank and Trust Company to avoid liability to Plaintiff for severance benefits and/or short and long term disability benefits, both estimated +$2,000,0000.00 each as well as liability for a pattern and practice of illegal discrimination in violation of state and federal laws, with an estimated potential liability of +$20,000,000.00. The fraud asserted was orchestrated and perpetrated by, senior officers and/or agents of State Street Bank & Trust Company. In clear violation of 18 U.S.C. 1001 and 1038, the cornerstone of

---

[10] Docket # 98-11868DPW

the conspiracy involved the misrepresentation of the date/terms of Petition's separation and his entitlement to severance/healthcare benefits to Liberty Mutual Insurance Company, Prudential Healthcare, Massachusetts Commission Against Discrimination, Equal Employment Opportunity Commission and the United States District Court. Respondents employed devices, and artifices to defraud Petitioner of his constitutionally guaranteed liberty and property interest. At all relevant times, the material misrepresentations and omissions particularized herein directly or proximately caused the damages sustained by Petitioner.

f. Investigator and Area Manager failed to find and depose any State Street executives with first hand knowledge of the threshold issue, the trigger date for statue of limitations, Title VII/ADEA, of the specific timing and terms of Plaintiffs separation and his entitlement to severance benefits as a benefit of employment.

g. The failure of Investigator to interview a range of Plaintiffs co-workers who could provide insight into his ADA compliant.

h. Investigator and Area Manager accepted as fact the unsupported and self-serving allegations contained in pleadings by State Street, although it is unreasonable to expect any public company, a defendant in a discrimination compliant to readily acknowledge a continuing pattern and practice of illegal discriminatory conduct, which would open the door to severe government action and significant civil money damage penalties.

i. The failure of Investigator and Area Manager to establish
and clearly identify the basis for the hotly disputed
stigmatizing information.

98.  Defendant, EEOC, failed to provide an adequate foundation in
constitutional law and supervise those persons hired to investigate
discrimination complaints, specifically:

a. The Constitutional requirement to provide an opportunity
for Plaintiff to be heard before publication as fact, of
hotly disputed stigmatizing information,

b. The failure to understand and appreciate the clearly
defined legal boundaries between investigation and
adjudication. Investigator and Area Manager exceeded the
scope of their statutory authority by the adjudication of a
disputed matter, thereby, subjecting themselves to personal
liability.

c. Investigator and Area Manager, failed to understand as a
matter of established law and fundamental fairness under
the due process clause of the Fifth and Fourteenth Amendments
to the United States Constitution, the finding that Plaintiff
was eligible to receive and did receive 26-weeks,
unemployment compensation, for a total of $16,900,in
accordance with M.G.L. 151A, makes him as immune from a
subsequent or collateral attack on the same set of facts as
is a criminal judgment of acquittal, *Commonwealth v. Travis*
*372 Mass. 238, 249*.

d. Reliance on MCAD investigative findings **does not** relieve
EEOC of its clearly defined statutory responsibility to
conduct good faith, objective investigations of allegations
of illegal employment discrimination.

e. Pleadings are not fact.

99.  Plaintiff has written numerous letters to EEOC informing them of
the falsity of their 1998 Memorandum and provided dispositive proof

thereof. In response EEOC has, (1) stood by it's findings; (2) re-affirmed its support for its findings; (3) denied any liability for publication of the stigmatizing statements and (4) falsely alleged the "*investigation file*" was destroyed, when in fact no investigation was conducted.

100. As a direct and proximate result of Defendants' negligence, Plaintiff has been deprived of his "liberty interest" and sustained injuries, in an amount to be specified at trial.

## SIXTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL
### (EQUAL EMPLOYMENT OPPORTUNITY COMMISSION)

101. Plaintiff repeats and re-alleges the above allegations, as if fully set forth herein.

102. The statutory provisions of The Civil Rights Act of 1964, established as a judicial perquisite to filing discrimination compliant in federal court, that a claim must first be filed with the EEOC for investigation. In so called deferral states such as Massachusetts claims must be filed within 300 days of the last alleged illegal discriminatory act. Only after the EEOC has had an opportunity to investigate the compliant, can a compliant be filed in federal court. As a matter of clearly established law, the EEOC has a clearly defined legal obligation to conduct objective good faith investigations of all alleged discrimination complaints and to seek redress and restitution for damages inflicted as a result of illegal discriminatory acts; total reliance on disputed third party (MCAD) findings does not fulfill that statutory obligation. Defendants reasonably foresaw that Plaintiff would rely upon this statutory obligation; Plaintiff did rely upon this statutory obligation to his detriment; and the hardship and unfairness suffered by Plaintiff can only be resolved by the Equal Employment Opportunity Commission immediately vacating its previous erroneous findings and initiating a good faith investigation of Plaintiffs

FIRST AMENDED COMPLIANT - 29

discrimination complaints based on recently submitted dispositive documentary evidence which fully corroborates material parts of the complaint, and restores the benefits to which Plaintiff is due.

**103.** Plaintiff's legal rights are tolled as a direct result of the clear fraudulent misrepresentations and omissions by counsel for State Street Bank & Trust Company, Plaintiff's previous employer.

**104.** Plaintiff may only be mitigating the unfairness and hardship resulting from Defendant's behavior by a new investigation of his EEOC compliant.

## SEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (INVESTIGATOR AND AREA MANAGER)

**105.** Plaintiff repeats and re-alleges the above allegations, as if fully set forth herein.

**106.** Publishing stigmatizing information, in violation of the Constitution, and with reckless disregard of the truth, regarding the reasons for Plaintiff's separation from State Street Bank & Trust Company, diminished his personal and professional respect, esteem, goodwill and deterred others from association and precluded any opportunity for future employment within the financial services industry.

**107.** Defendant's actions represented extreme and outrageous conduct.

**108.** As a direct and proximate result of Defendants' negligence, Plaintiff has been deprived of his "liberty interest" and sustained injuries, in an amount to be specified at trial.

## EIGHT CAUSE OF ACTION
## NEGILENT MISREPRESENTATION
## (INVESTIGATOR AND AREA MANAGER)

**109.** Plaintiff repeats and re-alleges the above allegations, as if fully set forth herein.

110.   The false stigmatizing statements published by defendants, which
were barred by the clearly defined legal doctrine of law collateral
estoppel, were made with reckless disregard for the truth.

111.   Much like the Spanish Inquisition, the English Court of Star
Chamber and the French monarchy's abuse of the *lettre de cachet*, The
defendant's gross negligence in the handling of this compliant is
clearly a menace to liberty that if not soundly rejected has the
potential to impacts all of us.  The egregious mishandling of this
compliant supports illegal retaliatory suppression of valid
challenges to illegal workplace discrimination, a complete disregard
for protected "liberty rights" as well as clearly defined procedural
due process. Few things are more immutable in the application of our
legal system than the concept of due process. With workplace
discrimination complaints rapidly increasing, with African-Americans
still very much the victims of deep-seated racial stereotyping as
evidenced by the research of a sociologist Devah Pager[11]:

   *"Today in America you have a better chance of being called back
   for a job interview if you're white with a criminal record than
   you do if you're black with a clean record- never having been
   arrested or convicted."*

112.   Defendant's clearly established gross negligence and violation of
clearly defined federal law as defined by the Supreme Court raises
important issues regarding the quality of its investigative
training, supervision and adequacy of internal control procedures.
The issues here are not complicated and there is no ambiguity in
federal law governing publication of stigmatizing employee
information.

113.   As a direct and proximate result of Defendants' negligence,
Plaintiff has been deprived of his "liberty interest" and sustained
injuries, in an amount to be specified at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

---

[11] "Racial Discrimination is Still at Work in U.S." Wall Street Journal,
September 4,2003

1. **Declaratory Judgment** as follows:

   a. Plaintiff's claim is equitably tolled.

   b. Defendants, Robert L. Sanders and Edith Kessler, violated clearly established federal law and are therefore not entitled to qualified immunity.

   c. Publication of hotly disputed stigmatizing information, without providing any opportunity for Plaintiff to be heard, deprived him of his "liberty interest" in violation of the Fifth Amendment to the United States Constitution.

   d. EEOC was negligent in its handling of Plaintiff's discrimination complaints.

   e. Plaintiff is entitled to compensatory damages, to be determined at trial, for the reprehensible behavior of Defendants.

2. **Injunctive Relief**

Specifically, Plaintiff request that this Court enter an Order:

   a. **Directing**, Defendants be prohibited from further violations of clearly established federal law.

   b. **Directing**, Defendants, develop a plan, to the satisfaction of this court, to remedy constitutional and investigative shortfall noted in this compliant.

   c. **Directing**, Defendants, to immediately initiate an investigation into Plaintiff's original discrimination compliant.

   d. **Directing** that Plaintiff may obtain on an expedited basis discovery (including depositions) from all individual Defendants regarding financial assets available or to be available to satisfy a judgment in favor of Plaintiff.

   e. **Restraining** individual Defendants (and their assignees and/or representatives acting on their authority), directly or indirectly, from entering into any agreement and/or transaction to dispose of any assets in an amount greater than $5,000.00, excluding normal living expenses, without providing

contemporaneous notice of the terms of such agreement and/or
transaction to the Court and Plaintiff.

3. For such other and further relief, that this Court deems just
and appropriate.

Dated this 13th day of May, 2005

By: _____
KEITH D. WASHINGTON,
PRO SE
6265 MAGNOLIA RIDGE
STONE MOUNTAIN,
GEORGIA 30087
TELL: 770 465 4088