UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

KEITH D. WASHINGTON )
)
Plaintiff, )
)
v. )
)
) Civil Action No. 05-CV-10619DPW
)
EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, et al )
)
)
Defendants. )
)
)

**DEFENDANTS' LEGAL MEMORANDUM SUPPORTING THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT**

**REQUESTED RELIEF**

Defendants Equal Employment Opportunity Commission ("EEOC"), Cari M. Dominguez, Robert L. Sanders and Edith Kessler move the Court for an order dismissing the Plaintiff's First Amended Complaint. The law requires dismissal of the First Amended Complaint for several reasons.[1]

First, this Court lacks subject matter jurisdiction over the Plaintiff's purported claim. Second, Plaintiff has failed to state a claim against the Defendants. Third, the Plaintiff has failed to comply with the Federal Rules regarding service of process. For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P.12(b)(1), (5) and (6).

---

[1] The Plaintiff did not serve his initial Complaint upon the Defendants until he served the First Amended Complaint. The Defendants' Motion to Dismiss, therefore, is directed to the First Amended Complaint, which supersedes the Complaint.

## BRIEF BACKGROUND OF CASE

This lawsuit is the Plaintiff's latest effort in a long-running dispute between him and his former employer, State Street Bank & Trust Company ("State Street"). From 1992 through approximately 1996-7, Plaintiff and State Street disputed various issues arising out of Mr. Washington's employment with State Street (First Amended Complaint, ¶¶ 9-39). Those disputes culminated in the termination of Plaintiff's employment with State Street and resulted in Plaintiff filing a discrimination charge against State Street with the EEOC and with the Massachusetts Commission Against Discrimination ("MCAD") (First Amended Complaint, ¶ 40).

After receiving charge determinations and notices of right to sue from those employment discrimination agencies (First Amended Complaint, ¶¶ 48, 54), the Plaintiff sued State Street for employment discrimination.[2] The litigation between Mr. Washington and State Street resolved in favor of State Street, despite Mr. Washington's multiple lawsuits and appeals to the First Circuit (see case dockets identified in footnote no. 2).

Unsatisfied with the result of his various lawsuits against State Street, Mr. Washington then sued MCAD, alleging that it had negligently investigated his charge against State Street and had made erroneous and otherwise improper findings during its investigation. *Washington v. Massachusetts Commission Against Discrimination, et al*, No. 04-12141-DPW, slip op. (D. Mass. Feb. 4, 2005). The Plaintiff's lawsuit against MCAD was dismissed by this Court on February 4, 2005. *Id.*

Rebuffed in his litigation efforts against his former employer and MCAD, the Plaintiff

---

2 The Plaintiff's cases against State Street include Case Nos. 98-11868-DPW, 98-12483-DPW and 99-12419-DPW, all before this Court.

2

now sues the EEOC and three of its officials for acts performed in their official capacities.[3] Similar to the aforementioned earlier lawsuits, Mr. Washington again disputes his former employer's contentions with respect to his employment termination and, as in his lawsuit against MCAD, again accuses a governmental investigative agency of negligence and violation of his constitutional rights during its investigation of his employment discrimination charge. As will be established by the remainder of this brief, the Plaintiff's specific claims against these Defendants must also be dismissed.

## FIRST AMENDED COMPLAINT'S SPECIFIC CLAIMS

The 33-page, 113-paragraph First Amended Complaint contains numerous allegations which are not directed to the Defendants. For example, paragraphs 9-42 present Plaintiff's legal argument that State Street discriminated against him, including many factual allegations regarding that employer's conduct. Paragraphs 42-47 allege improprieties in MCAD's investigation of Plaintiff's employment discrimination charge. For purposes of this Motion, the essence of these allegations is that State Street's termination of Mr. Washington's employment was discriminatory, that State Street's contention during the discrimination charge investigation that Mr. Washington had misappropriated bank funds was false and that MCAD's reference to State Street's misappropriation contention in MCAD's charge determination was defamatory. (The Plaintiff has repetitively claimed defamation by State Street; this Court dismissed that claim based upon absolute immunity for statements in judicial/administrative proceedings. *Washington v. State*

---

[3] The three individual defendants - EEOC Chair Dominguez, EEOC Boston Area Office Director Sanders and EEOC Boston Area Office Investigator - are all sued in their official capacities (Amended Complaint, ¶¶ 6-8). Therefore, the lawsuit against them is treated as a suit against the EEOC. *Kentucky v. Graham*, 473 U.S. 159,165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Amended Complaint's caption states that these individuals are sued in their official and individual capacities, but the pleading's allegations do not suggest any acts of these individual Defendants other than performance of their official duties. Nor has the Plaintiff served them in their individual capacities. Undersigned counsels represent these individual defendants only in their official capacity.

3

*Street Bank, et al,* Case No. 98-12483, Memorandum decision of September 30, 1999.)

With respect to the Defendants, the Plaintiff makes the following material factual allegations: (1) that Plaintiff filed joint discrimination charges against State Street with the EEOC and MCAD on July 25, 1997 (First Amended Complaint, ¶ 40); (2) that the EEOC suspended its investigation of those charges pending MCAD's investigation and findings pursuant to the EEOC's work sharing agreement with MCAD (First Amended Complaint, ¶ 50); (3) that MCAD determined that Mr. Washington's charge was not filed in timely fashion and referenced in this charge determination that State Street contended that Mr. Washington has misappropriated State Street funds (First Amended Complaint, ¶¶ 47-51); (4) that the EEOC issued a Notice of Right to Sue to Plaintiff on June 4, 1998, explaining that Plaintiff's charge was not filed within the legal time limits and therefore could not be investigated by the EEOC (First Amended Complaint, ¶ 54); and (5) that the EEOC has declined to reverse the EEOC's finding regarding the Plaintiff's charge, despite numerous letters written by Plaintiff to the EEOC "informing them [EEOC] of the falsity of their 1998 Memorandum and provided dispositive proof thereof." (First Amended Complaint, ¶ 59).[4]

Based upon the foregoing factual allegations, the Plaintiff claims that the EEOC was negligent, intentionally inflicted emotional distress and violated its statutory promise to investigate charges ("promissory estoppel") in issuing its determination regarding Mr. Washington's discrimination charge, thereby becoming liable pursuant to the Federal Tort Claims Act (Amended Complaint, ¶¶ 3, 70, 97-99, 102-104, 106-108 and 110-113). The Plaintiff also alleges that the EEOC violated his constitutionally protected liberty interest in his good name (5th and 14th Amendments) and should therefore be held liable pursuant to 42 U.S.C. §§ 1981, 1983

---

4 The Amended Complaint is vague as to whether the EEOC allegedly issued its own determination or whether the Plaintiff contends that the EEOC is responsible for MCAD's determination, either by way of express adoption or legal imputation through the work sharing agreement of the two agencies.

(Amended Complaint, ¶¶ 62, 70, 75-76, 78-81, 83-86, 89-95 and 97-99). As will be subsequently shown, none of these allegations sustain this Court's subject matter jurisdiction, nor do they state a claim upon which relief may be granted against these Defendants.

## LEGAL ARGUMENT

### I. *This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Against The EEOC*

Federal district courts are courts of limited jurisdiction, empowered to hear only such cases as are specified in statutory jurisdictional grants from Congress. *Aldinger v. Howard*, 427 U.S. 1, 14-15, 96 S.Ct. 2413, 49 L..Ed.2d 276 (1976); Wright, *The Law of Federal Courts* § 7 (1983). The doctrine of sovereign immunity further limits the federal district courts' jurisdiction in cases against the government. The doctrine dictates that the sovereign cannot be sued *except in the manner in which it consents to be sued*. *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed.1058 (1941). There must be statutory authority evidencing the consent of the sovereign to be sued and conferring jurisdiction on the District Court to entertain [the] action. *United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940). A waiver of sovereign immunity must be unequivocally expressed. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The absence of consent to suit is a "fundamental, jurisdictional defect." *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3654, at 194-95 (1985). When the United States does consent to be sued, it defines the strictly construed conditions under which it is willing to be sued. *Id.* For example, suit may only be brought in a court designated by Congress. *Minnesota v. U.S.*, 305 U.S. 382 (1939).

The Plaintiff erroneously identifies 28 U.S.C. §§ 1331, 1343 and 1367 as the statutes upon

which this Court may exercise subject matter jurisdiction. While Mr. Washington does attempt to state claims under the civil rights statutes, the specific statute which grants jurisdiction to federal courts for civil rights claims - 28 U.S.C. § 1343 - does not provide jurisdiction for Mr. Washington's claims against the Defendants. The statute states:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> > (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, *by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42*;
> >
> > (2) To recover damages from any person who fails to prevent or to aid in preventing *any wrongs mentioned in section 1985 of Title 42* which he had knowledge were about to occur and power to prevent;
> >
> > (3) To redress the deprivation, *under color of any State law, statute, ordinance, regulation, custom or usage,* of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
> >
> > (4) To recover damages or to secure equitable or other relief under any act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C. § 1343(a) (emphasis supplied).

The preceding statutory language does not create an independent basis for federal jurisdiction, but only serves to confer jurisdiction where a federal cause of action is provided by one of the substantive sections of the Civil Rights Act. *Ellis v. Cassidy,* 625 F2d 227, 229 (9th Cir. 1980). The first two subsections of 1343 grant the district courts jurisdiction of actions for damages by any act done in furtherance of any conspiracy mentioned in 42 U.S.C. § 1985; Plaintiff does not allege violation of 42 U.S.C. § 1985, so Mr. Washington cannot rely on either of the first two subsections of 1343.

The remaining subsections of § 1343 do not create jurisdiction for a claim against the Defendants because they address civil rights claims arising only from state, not federal, action. As stated in *Ramirez v. Weinberger,* 363 F. Supp. 105, 108 (N.D. Ill. 1973), *aff'd,* 415 U.S. 970 (1974):

> [J]urisdiction over [a] federal defendant cannot be sustained under 28 U.S.C. § 1343(3) and (4) "because that section provides a federal forum . . . only when constitutional rights allegedly have been violated by those acting under color of State law." *Stinson v. Finch,* 317 F. Supp. 581 at 585 (N.D. Ga. 1970).

See also *Doe v. Boyle,* 494 F.2d 1279 (4th Cir. 1974); *Beale v. Blount,* 461 F.2d 1113 (5th Cir. 1972); *Giles v. EEOC,* 520 F. Supp. 1198, 1199 (E.D. Mo. 1981); *Metadure Corp. v. U.S.,* 569 F.Supp. 1496, 1498 (D.C.N.Y. 1983).

Moreover, sovereign immunity bars claims based on 42 U.S.C. §§ 1981 and 1983 against the United States. See *Hohri v. United States,* 782 F.2d 227, 245 n.43 (D.C. Cir. 1986), *vacated on other grounds,* 482 U.S. 64 (1987) (concluding in regard to the Civil Rights Acts that "[t]hese statutes, by their terms, do not apply to actions against the United States"); *Unimex, Inc. v. United States Dep't of Hous. and Urban Dev.,* 594 F.2d 1060, 1061 (5th Cir. 1979) (per curiam) (stating that "the United States has not consented to suit under the civil rights statutes"); *Bernard v. Calejo,* 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998) ("As with section 1983, section 1981 does not contain an express waiver of sovereign immunity and thus many not be used against the United States." (citations omitted)).

The more general method by which to obtain federal court jurisdiction - the federal question jurisdictional statute, 28 U.S.C. §§ 1331 - is also of no assistance to Mr. Washington. The federal question statute grants the district courts original jurisdiction over actions "arising under the Constitution, laws or treaties of the United States." Section 1331 is not a general

waiver of sovereign immunity and therefore does not, standing alone, create federal jurisdiction. *Keene Corp. v. United States*, 700 F.2d 836, 838 n.3 (2d Cir. 1983), *cert. denied*, 464 U.S. 864; *Reed v. Reno*, 146 F.3d 392, 397-98 (6th Cir. 1998); *Ellis, supra*, 625 F2d at 229. In order to fall within §1331 jurisdiction, a claim must be created by federal law. *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 988 (4th Cir. 1990), *cert. denied*, 498 U.S. 1047. Federal law does not create a claim for Mr. Washington, so § 1331 cannot confer subject matter jurisdiction (the absence of a federal claim will be demonstrated in section II).

Finally, the Plaintiff's jurisdictional reliance on 28 U.S.C. § 1367 is misplaced because that statute grants only "supplemental" jurisdiction to a federal court in only those in actions in which the court possesses original jurisdiction through another statute. *See, e.g., ZB Holdings, Inc. v. White*, 144 F.R.D. 42 (S.D.N.Y. 1992). Supplemental jurisdiction enables federal courts to hear related state law claims for which there is no independent basis of jurisdiction. *Bermingham v. Sony Corp. of America, Inc.*, 820 F. Supp. 834, 855 (D.N.J. 1992)(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)); *Wexley v. Michigan State Univ.*, 821 F. Supp. 479, 487 (W.D. Mich. 1993). As EEOC is a federal agency which enforces federal laws and there is no independent basis of jurisdiction over EEOC in this matter, Plaintiff cannot rely upon section 1367 as a ground for jurisdiction.

As previously established, the Plaintiff has failed to adequately allege any statutory basis upon which this Court can exercise original jurisdiction. The First Amended Complaint must be dismissed pursuant to Fed.R.Civ.Proc.12(b)(1).

## II. *The Plaintiff Has Failed To Allege A Claim Upon Which Relief May Be Granted Against The EEOC*

Fed.R.Civ.P. 12(b)(6) requires dismissal of a complaint if it fails to state a claim upon

which relief may be granted. All allegations in the complaint are to be taken as true, *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), although bald assertions, subjective characterizations and legal conclusions are not deemed true. *DM Research v. College of American Pathologists,* 170 F.3d 53, 55-56 (1st Cir. 1999).

The factual gist of the Plaintiff's First Amended Complaint is two-fold: (1) that the EEOC's dismissal of his employment discrimination charge against State Street Bank was based on inadequate investigation, and (2) that the EEOC's charge determination's reference that State Street contended that Mr. Washington had misappropriated bank funds was improper because Mr. Washington "hotly contested" his former employer's claim. The First Amended Complaint alleges that these EEOC actions deprived Mr. Washington of his property and liberty interest (i.e., his reputation) without proper due process in contravention of the Fifth and Fourteenth Amendments and in violation of 42 U.S.C. §§ 1981 and 1983.

These allegations fail to state a claim upon which relief may be granted. Addressing similar claims of an EEOC's charge determination's harm to a charging party's reputation and the absence of investigation, *Francis-Sobel v. Univ. of Maine,* 597 F.2d 15 (1st Cir. 1979), *cert. denied,* 444 U.S. 949 (1979), found such claims to be non-viable:

> Appellant's complaint that appellee injured her reputation interest is similarly groundless. Appellee's letter finding no reasonable cause stated merely that persons hired in appellant's stead "possessed qualifications more in line with their respective positions than did the Charging Party." Such a neutral evaluation is not a deprivation of a liberty interest no matter how undue the process which leads a government official to make the evaluation [citation omitted}.

*Id.,* at 17-18.

The *Francis-Sobel* case also addressed the plaintiff's allegations that the EEOC denied a proper investigation to Francis-Sobel, stating:

9

> Because a determination of reasonable cause is nonbinding and nonfinal, investigative and not adjudicative, we cannot say that the failure to receive such a determination represents any loss that implicates the Due Process clause. *See Georator Corp. v. EEOC, supra.* Nor do we think that even the arbitrary and capricious denial of the investigative and conciliatory benefits the EEOC can provide to a charging party transgresses the Due Process clause . . . ".

*Id.,* at 18.

*Francis-Sobel* establishes that the Plaintiff's inadequate investigation and defamation claims are not cognizable regardless of whether they are asserted as violations of the Fifth Amendment or of 42 U.S.C. §§ 1981 or 1983. *Accord, Feldstein v. EEOC,* 547 F.Supp. 97 (D.Mass. 1982); *Pearlswig v. Randolph,* 297 F.Supp. 569 (D.Mass 1980). The First Circuit is not alone in reaching this conclusion, as shown by similar decisions addressing one or more of such claims in *Georator Corp. v. EEOC,* 592 F.2d 765 (4th Cir. 1979) (addressing 5th Amendment claim); *Newsome v. EEOC,* 301 F.3d 227 (5th Cir. 2002) (addressing 14th Amendment and section 1983, 1985 claims); *Stewart v. EEOC,* 611 F.2d 679 (7th Cir. 1979) (addressing 5th Amendment claim); *Querim v. EEOC,* 111 F.Supp.2d 259 (S.D.N.Y. 2000) (addressing 5th Amendment claim); *D'Alessandro v. EEOC,* 215 F.Supp.2d 419 (D.Del. 2002) (addressing 5th Amendment claim); *Forbes v. Reno,* 893 F.Supp. 476 (W.D. Pa.1995) (addressing 5th Amendment claim), *aff'd,* 91 F.3d 123 (3rd Cir. 1996); *Jaffer v. Nat'l Caucus and Ctr. on Black Aged,* 296 F.Supp.2d 539 (M.D.N.C. 2003) (addressing section 1981, 1983 claims); *Hall v. EEOC,* 456 F.Supp. 695 (N.D. Cal. 1978) (addressing 5th Amendment claim); *Storey v. Rubin,* 976 F.Supp. 1478 (N.D.Ga. 1997) (addressing 5th and 14th Amendment claims).

*Francis-Sobel* explains why the challenged EEOC actions do not implicate rights protected by the 5th or 14th Amendments. The propriety of the foregoing decisions regarding the Plaintiff's statutory claims is also clear. 42 U.S.C. § 1981 provides for equal rights under the law

for all persons within the jurisdiction of the United States; it protects against infringement of those rights by *non-governmental* actors. 42 U.S.C. § 1981(c); *Carlton v. Ryan*, 916 F.Supp. 832 (N.D. Ill 1996).[5]

The other civil rights statute referenced by Mr. Washington, 42 U.S.C. § 1983, creates the following cause of action:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,* subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

(emphasis supplied). The emphasized language limits section 1983's liability to the deprivation of constitutional rights by persons acting under color of law of any state, territory or District of Columbia; section 1983 does not address claims against federal officials acting under color of federal law. *Daly-Murphy v. Winston*, 820 F.2d 1470 (9th Cir. 1987); *Jonn's Insulation, Inc. v. Siska Const. Co., Inc.*, 774 F.Supp. 156, 161 (S.D.N.Y. 1991); *Morpurgo v. Board of Higher Education in City of New York*, 423 F.Supp. 704, 714 (D.C.N.Y. 1976). Thus, the Plaintiff cannot state a claim under section 1983 because EEOC is a federal agency operating pursuant to federal law.

Similarly, Mr. Washington's civil rights claims against the EEOC employees in their individual capacities, if any, also fail because claims against government employees based on sections 1981 and 1983 are untenable when the individuals are acting pursuant to federal law. See, *e.g., Kentucky,* 473 U.S. at 165 ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."); *Lee v. Hughes*, 145

---

[5]Additionally, the United States is protected by sovereign immunity for § 1981 claims. *Lynn v. U.S. Dept. of Health and Human Services*, 583 F. Supp. 532, 534 (S.D.N.Y. 1984).

F.3d 1272, 1277 (11th Cir. 1998) (noting that "Section 1981 provides a cause of action for individuals subjected to discrimination by private actors and discrimination under color of state law, but does not provide a cause of action for discrimination under color of federal law."); *Daly-Murphy v. Winston,* 820 F.2d 1470, 1477 (9th Cir. 1987) (reasoning that section 1983 does not provide a remedy against individual defendants acting under color of federal law).

In addition to relying upon the foregoing federal statutory or constitutional provisions, the Plaintiff asserts negligence, misrepresentation and promissory estoppel (the Plaintiff alleges that the statutory language of Title VII constitutes the EEOC's "promise") against the EEOC for failing to "meaningfully" investigate his charge and for reaching the wrong conclusion regarding that charge (First Amended Complaint, ¶¶ 70, 97-99, 102-104 and 110-113). These claims are also insufficient to state a cognizable claim because neither Title VII, nor any other statute referenced in the Amended Complaint creates an express or implied cause of action against the EEOC for alleged mishandling of a charge investigation.

In order to state a cognizable Title VII claim against the EEOC, Plaintiff must demonstrate that Congress granted a right of action against the EEOC in the Title VII "either expressly or by clear implication." See *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The EEOC was created by Title VII to investigate charges of employment discrimination. Title VII creates a cause of action for victims of discrimination (known as "charging parties"), but that claim lies only against *the victim's employer.* The explicit remedies for individuals who believe that their employers have illegally discriminated against them are provided by 42 U.S.C. §§ 2000e-5 and 2000e-16. An individual may file a discrimination charge with the EEOC and then, if necessary, file an action in federal district court against the alleged discriminating *employer.* The Plaintiff was not employed by the EEOC. Therefore, his suit against the EEOC is

not expressly authorized by Title VII because Title VII does not create an express cause of action by charging parties against the EEOC.

Nor does Title VII create an implied right of action for persons like Mr. Washington. The essential question in determining whether a federal statute *implicitly* authorizes a cause of action is whether the statutory scheme is consistent with the inference that Congress intended to create a particular right of action (here, a suit against the enforcement agency). The Supreme Court has applied a narrow interpretation to implied action analyses, even to statutes in which Congress has expressly provided some remedies but remained silent on others. See *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 14-15, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 571-73, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 734, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). In such cases, a court must be chary of inferring the remedy, doing so only when there is strong indicia of legislative intent to create the remedy. *Middlesex County Sewerage Auth.,* 453 U.S. at 14-15.

The statutory scheme and legislative history of Title VII show that it would be inconsistent with legislative intent to infer a private remedy against the EEOC. In *Occidental Life Ins. Co. v. Equal Employment Opportunity Comm'n,* 432 U.S. 355, 365-66, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Court concluded, based on Title VII's legislative history, that Congress intended the individual's right to bring a *de novo* lawsuit against respondent employer to be the individual's sole judicial remedy under Title VII, even if the EEOC, in processing a charge, might act slowly, erroneously, or not at all. *Id.*

Moreover, neither enforcement activities, nor administrative findings of the EEOC determine the rights of the parties, e.g., *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973), because enforcement of Title VII is ultimately implemented by *de novo* federal district court action. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). This legislatively created enforcement framework would be frustrated by an implied right for a charging party to sue the EEOC instead of the allegedly discriminating employer. Legislative intent is hardly consistent with such claims. *Hall, supra,* 456 F. Supp. at 701 explained:

> Congress intended that the private right of action preserved by § 706(f)(1) [of Title VII] be the all-purpose remedy for charging parties dissatisfied with the EEOC's handling of their charge. In short, we do not think Congress could have been more clear in expressing its intent that the private right of action preserved by §706(f)(1) is "an adequate remedy in a court" for the alleged shortcomings in the EEOC's handling of the plaintiffs' charges.

*Accord, Ward* v. EEOC, 719 F.2d 311, 314 (9th Cir. 1983), which stated:.

> "We join with the other circuits which have considered the question and conclude that the legislative history of the 1972 amendment of Title VII strongly indicates that Congress did not intend to imply a private cause of action against the EEOC."

[citations omitted].

Mr. Washington availed himself of his *de novo* right to sue State Street. The Plaintiff's dissatisfaction with the result of his litigation with State Street does not allow him to sue the EEOC, just as it did not allow him to sue MCAD. The First Circuit in *Francis-Sobel* and every other Court of Appeal which has considered this issue have concluded that the EEOC is not liable to victims of discrimination, nor to alleged perpetrators of discrimination for EEOC conduct in processing a discrimination charge. In addition to *Francis-Sobel*, the other cases holding similarly include *Smith v. Casellas*, 119 F.3d 33 (D.C. Cir. 1997); *Scheerer v. Rose State College*, 950 F.2d 661 (l0th Cir. 1991); *McCottrell v. EEOC*, 726 F.2d 350 (7th Cir. 1984); *Ward v. EEOC*, 719 F.2d 311 (9th Cir. 1983); *Georator Corp., supra;* and *Gibson v. Missouri Pac RR*, 579 F.2d

890, 891 (5th Cir. 1978). One of the more recent circuit court decisions succinctly summarized the law: "Although this Court has not yet addressed this issue squarely, several district courts within this Circuit and (apparently) every court of appeal that has considered the issue agree that Title VII provides no cause of action--either express or implied-- against the EEOC for claims of procedural defects. . . .[citations omitted] . . . We find the reasoning of these cases persuasive." *Baba v. Japan Travel Bureau Int.'l, Inc.*, 111 F.3d 2, 4 (2d Cir. 1997).

The Plaintiff references the Federal Tort Claims Act ("FTCA") while alleging that the Defendants intentionally inflicted emotional distress upon him, defamed him and were otherwise negligent in the EEOC's handling of his charge. The FTCA is a statutory waiver of sovereign immunity by the government for certain types of claims. However, the FTCA still provides Mr Washington with no comfort because the FTCA expressly continues sovereign immunity for defamation and misrepresentation claims. 28 U.S.C. § 2680(h). An intentional infliction of emotional distress claim is also excluded from the FTCA's waiver of the government's sovereign immunity when such claim is related to allegedly defamatory conduct, as Plaintiff has alleged herein. *Limone v. U.S.*, 271 F.Supp.2d 345 (D.Mass. 2003), *aff'd in part and remanded in part*, 372 F.3d 39.

Finally, the First Amended Complaint establishes that Mr. Washington's claim is untimely. The EEOC's alleged culpable occurred on June 4, 1998 when it terminated its investigation of the Plaintiff's charge and issued its determination which included the allegedly defamatory language (First Amended Complaint, ¶ 54). The Plaintiff filed his FTCA administrative claim with the EEOC in April 2004 (First Amended Complaint, ¶ 3), well beyond the FTCA's two-year limitation period for filing such claims. 28 U.S.C. § 2401(b).

In summary, sovereign immunity precludes claims for monetary or equitable relief

brought against the United States, including claims for constitutional violations, unless the government has expressly consented to such suit. *Jaffee v. United States*, 592 F.2d 712, 717 (3rd Cir. 1979). The Plaintiff fails to allege any such waiver of sovereign immunity for his claims in the First Amended Complaint. To the contrary, the legal authority cited herein establishes consistent and widespread rejection of claims against the EEOC arising out of its investigation of an employment discrimination charge.

### *III. The Plaintiff's Service of Process Is Defective*

Rule 4(i), Fed.R.Civ.Proc., sets forth the service requirements applicable to commencing a lawsuit against the United States, its agencies or employees. In order to properly serve the EEOC, a plaintiff must do all of the following: (1) deliver a copy of the summons and complaint to the United States Attorney for the district in which the action is brought (Rule 4(i)(1)(A)); (2) send a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States (Rule 4(i)(1)(B)); and (3) send a copy of the summons and complaint by registered or certified mail to the defendant agency (Rule 4(i)(2)(A)).

If an employee of a government agency is sued only in his official capacity, he or she must receive a copy of the summons and complaint by registered or certified mail (Rule 4(i)(2)(A)). If a government employee is also sued in his individual capacity, then he or she must be served personally with the summons and complaint (Rule 4(i)(2)(B), referencing Rule 4(e)).

The certificate of service provided by Mr. Washington with the Complaint and First Amended Complaint states only that those documents were mailed to the Defendants by pre-paid First Class Postage. PACER does not identify any other certificate of service filed by the Plaintiff. Therefore, Plaintiff's service of process is defective in the following respects:

      1. A summons and complaint has not been delivered to the U.S. Attorney for the

16

District of Massachusetts;

    2. A summons and complaint were not sent to the EEOC by registered or certified mail;

    3. None of the individual Defendants have been sent a summons and complaint by registered or certified mail;

    4. None of the individual Defendants have been personally served with a summons or with a complaint, a defect in service if the Plaintiff is suing an individual Defendant in his or her individual capacity.

The First Amended Complaint should be dismissed because of the preceding defects in service pursuant to Rule 12(b)(5), especially in light of the filing date of March 8, 2005, which is more than 120 days ago.

## CONCLUSION

In suing the federal government, a plaintiff must establish the existence of a cognizable cause of action, the government's waiver of sovereign immunity regarding that cause of action, and the court's subject matter jurisdiction to entertain that cause of action. Mr. Washington has failed to establish the subject matter jurisdiction of this Court, any waiver of sovereign immunity or a claim upon which any form of relief, monetary or otherwise, may be granted. Additionally, the Plaintiff has failed to properly serve any of the Defendants. The First Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1), (5) and (6).

Dated July 11th, 2005.

Respectfully submitted,

PEGGY R. MASTROIANNI
Associate Legal Counsel

THOMAS J. SCHLAGETER
Assistant Legal Counsel


*/s/ James A. Allison*
James G. Allison
Wis. Bar # 1012684
Attorneys for Defendants
EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
1801 L Street, NW

Washington, D.C. 20507

(202) 663-4661

18