## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KEITH D. WASHINGTON,
　　　　　*Plaintiff, pro se*　　　　　**DOCKET# 05-10619DPW**

Vs

Equal Employment Opportunity Commission [EEOC]

ROBERT L. SANDERS, **in his Individual** and
Official Capacity as, EEOC- Director Boston Area Office

EDITH KESSLER, **in her Individual** and official
Capacity as Investigator at EEOC-BOSTON
　　　　　　　*Defendant(s)*

### MEMORANDUM WITH ATTACHMENT A-E, IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGEMENT PURSUANT TO FRCP 55, AGAINST:

### (1)　ROBERT L. SANDERS, *in his individual capacity*
### (2)　EDITH KESSLER, *in her individual capacity*

1. The individual defendants are sued in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, *403 U.S. 388 (1971)*. "*In Bivens…we recognize for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional right's.*"

1. FRCP RULE 55(a) reads: "***When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and the fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.***"

2. Defendants Robert L. Sanders and Edith Kessler, in their individual capacities have failed to plead or otherwise respond to this compliant as required, accordingly Plaintiff seeks Default Judgment.

### COMPLIANT

3. Deprivation of "Liberty Interest" and the privileges and immunities of United States citizenship in violation of the Fifth and Sixth Amendments of the U.S. Constitution;

4. Violation of the Equal Protection clause and privileges and immunities of United States citizenship in violation of the Fifth and Sixth Amendments of the U.S. Constitution;

5. Negligence

6. Negligent infliction of emotional distress

7. Intentional infliction of emotional distress

8. Failure to supervise

## STATEMENT OF JURISDICTION

9. This action arises under the Fifth and Sixth Amendments to the Constitution of the United States; the Federal Tort Claims Act (1946) currently codified at 28 U.S.C. 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671-2680; 42 U.S.C. 1981, and the General Laws of the Commonwealth of Massachusetts. Jurisdiction is based on 28 U.S.C. 1331, which gives original jurisdiction to the federal courts of civil actions against federal officers or employees charged with violating constitutional rights, where the amount in dispute exceeds $75,000.00.

## PARTIES

10. Plaintiff, an American-American, United States Citizen, honorably discharged, highly decorated Vietnam combat veteran, with an impeccable personal and professional record, within the global financial services industry, is not a public figure and is currently a resident of Stone Mountain, Georgia. Plaintiff brings this suit for restitution and repair of the injuries sustained by him as a result of the actions and inactions of agents of the Equal Employment Opportunity Commission committed in connection with the investigation of his workplace discrimination compliant.

11. Defendant EDITH KESSLER, [hereinafter referred to as "Investigator"] was at all times mentioned in this compliant assigned to the EEOC-Boston Area Office and was the designated investigator assigned to Charge # 16C973396, Washington v. State Street Bank & Trust Company.

12. Defendant ROBERT L. SANDERS, [hereinafter referred to as "Area Manager"] was at all times mentioned in this compliant assigned to the

Boston Office of EEOC and was the designated supervisor assigned to
Charge # 16C973396, Washington v. State Street Bank & Trust Company.

### 13. JURISDICTIONAL PREQUISITIES

**14.** Federal Tort Claims Act ("FTCA")

**15.** Through the enactment of the FTCA, the government has generally waived its
sovereign immunity from tort liability for the negligent or wrongful acts or
omissions of its agents who act within the scope of their employment.

**16.** Constitutional And State Law Violations

Plaintiff's claim under FTCA alleges conduct that violates the Constitution as well
as laws of the Commonwealth of Massachusetts. [FDIC v. Meyer, 114 S. Ct. 996,
1001 (1994). Since publication of it's erroneous findings, Plaintiff, in his individual
capacity, has filed multiple complaints with the EEOC.

### STATUE OF LIMITATIONS SHOULD BE
### EQUITABLE TOLLED AND WAIVED

**17.** The rationale for the judge-made doctrine of equitable tolling is to protect
laypersons from the harsh consequences of strict application of procedural
requirements. This is especially true for laypersons that seek redress for
unlawful civil rights violations. A number of circuits have concluded that
mental illness can justify equitable tolling. In Irwin v Department of Veterans
Affairs, 498 U.S. 89 (1990), the Supreme Court held that there is a rebuttable
presumption that all federal statues of limitations contain an implied equitable
tolling provision. A careful study of Supreme Court precedent, as well as that
of the regional circuits, reveals that equitable tolling is available in a variety of
circumstances including when a party has been mentally incapacitated. While
the Supreme Court has yet to specifically address whether mental illness can
justify equitable tolling, in *Irwin*, an employment discrimination case, petitioner
claimed that the 30-day period prescribed in 42 U.S.C. section 2000e-16( c)
should be tolled because his attorney was out of the country and did not,
therefore personally receive the relevant notice. *498 U.S. at 91.* That case
recognized that equitable tolling applied in suits against the government, but
did not discuss the availability of tolling based on mental illness. *Id at 95-96.*
Subsequently, *United States v. Brockamp, 519 U.S. 347 (1997),* a tax refund

3

case, was decided. In Brockamp, the Ninth Circuit had determined that petitioners who suffered from alcoholism and senility, were entitled to equitable tolling of 36 U.S.C. section 6511. *519 U.S. at 319*. Although the Supreme Court concluded that section 6511 should not be subject to equitable tolling because the Irwin presumption had been rebutted, it said that *"[mental disability], we assume, would permit a court to toll the statutory limitations period."Id at 348*. Therefore, the Court has intimated that tolling based on mental incapacity is allowed. More recently, it decided *Young v. United States, 535 U.S.* 43 (2002), a bankruptcy case that involved whether 11 U.S.C. section 507(a)(8)(A)(i)'s lookback period could be tolled during the pendency of a prior bankruptcy petition. The Court noted that equitable tolling has been widely permitted in the two situations acknowledged in *Irwin*, supra, and its progeny. *Young, 535 U.S.at 50*. Significantly, and of critical importance to the outcome of *Young*, the Supreme Court said, *"We have acknowledged, however, that tolling might be appropriate in other cases, and this we believe is one."* Id. (citations omitted). Equitable tolling of federal statues of limitations is therefore available in more than the two circumstances described in *Irwin* and *Bailey*. See *Nunnally v. MacCausland, 996 F. 2d 1, 5 n.7 (1st Cir. 1993)*. ("*A fair reading of Irwin, however, shows that the Court did not undertake an exhaustive list of factors that may be considered in the equitable weighing process.*"). In addition to the guidance provide by the Supreme Court, several circuits have allowed equitable tolling based on mental illness. This circuit has established that mental incapacity is a suitable basis on which to equitably toll a statue of limitations. See *Melendez-Arroyo v. Culter-Hammer DE P.R., Co., 273 F.3d 30, 39 (1st Cir. 2001)* (the mental illness must have been "so severe that the plaintiff was [un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel." Remanding for factual inquiry into whether plaintiffs mental state warranted equitable tolling); *Nunally, 996 F. 2d at 5* (holding that 5 U.S.C. section 7703(b)(2) can be tolled due to mental incapacity); *Oropallo v. United States, 994 F. 2d 25, 28 n. 2 (1st*

4

*Cir. 1993)*(holding that 26 U.S.C. section 6511 may not be equitably tolled, but that mental incapacity is grounds for tolling when available.). The Second, Sixth, Seventh, Ninth and D.C. Circuits have held the same in a variety of circumstances. See *Zerilli-Edelglass v. New York City Transit Auth., 333 F. 3d 74, 80 (2d Cir. 2003)* ("Equitable tolling is generally considered appropriate where… a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion.") (citations omitted); *Chapman v. Choicecare Long Island Term Disability Plan, 288 F. 3d 506, 514 (2d Cir. 2002)*(recognizing mental incapacity as a basis for equitable tolling under ERISA); *Brown v. Parkchester S. Condos., 287 F. 3d 58, 60 (2d Cir. 2002)* (Title VII case finding that plaintiff proffered sufficient evidence to warrant a hearing on whether her mental incapacity required tolling); *Boos v Runyon, 201 F. 3d 178, 184 (2d Cir. 2000)*(holding that 29C.F.R. section 1614.105(a)(1) is subject to equitable tolling based on mental illness); *Canales v Sullivan, 936 F. 2d 755, 756 (2d Cir. 1991)*(holding that 42 U.S.C. section 405(g) may be equitably tolled based on a plaintiff's mental impairment); *Cantrell v Knoxville Cmty. Dev. Corp., 60 F. 3d 1177, 1180 (6th Cir. 1995)*(holding that attorney's mental illness may justify equitable tolling); *Miller v. Runyon 77 F.3d 189, 191 (7th Cir. 1996)*(finding that 29 U.S.C. section 791 may be tolled "if the plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time"); *Stoll v Runyon, 165 F. 3d 1238, 1242 (9th Cir. 1999)*(holding that mental incapacity is an extraordinary circumstance that may warrant equitable tolling); *Smith-Hayne v Dist. of Columbia, 155 F 3d 575, 579 (D.C. Cir. 1998)* (holding that the doctrine of equitable tolling "can fairly be read to encompass cases where a plaintiff has been unable to [timely file] because of disability"). The Third Circuit has allowed equitable tolling based on mental illness, but has limited its application. In Lake v Arnold, 232 F 3d 360, 364 (3d Cir. 2000), a mentally retarded women sued her family and physicians for having sterilized her without her consent. She filed her 42 U.S.C. section 1983 and 1985 claims

outside the applicable two-year statue of limitations. Id. The court determined that the statue of limitations could be tolled because the incompetence that caused the delay also "motivated to some degree, the injury that [s]he sought to remedy." Id at 371.

18. Plaintiff has been unrepresented by counsel during the relevant filing period, the documented severity of his mental disability resulted in plaintiff's inability to engage in rationale thought and deliberate decision-making, necessary to pursue his claim alone.

19. Defendants' deliberate policy and practice since 1998 and continuing to the present, has been to deny any culpability, or legal liability for their illegal actions and to discourage Plaintiff from bringing this suit. Defendants have knowingly perpetuated confusion, misinformation and failed to provide information to support their conclusions or to take steps to correct them based on dispositive documentary evidence submitted by Plaintiff. Defendants are precluded by their own acts and omissions from asserting the statue of limitations as a defense. Under the doctrine of unclean hands, Defendants are estopped from claiming this affirmative defense. As a result of Defendants' fraudulent concealment, Plaintiff has been unable to, even with reasonable diligence, to discover the underlying facts

20. Only now does Plaintiff have sufficient information to state the nature of the causes of action that can be brought and against whom. Defendants' have concluded that their illegal action was Plaintiff's fault and was something to be swept under the carpet.

21. Plaintiff's administrative claim to EEOC, dated April 12, 2004, was denied in a letter dated September 9,2004, in a letter from Leonora L. Guarraia, Chief Operating Officer. Reconsideration of Washington's tort claim was again denied by letter dated December 7,2004. Instant compliant is filed within the six-month applicable period of both letters.

## INDIVIDUAL DEFENDANTS ARE
## NOT ENTITLED TO QUALIFIED IMMUNITY

22. Defendants without benefit of depositions, answers to interrogatories, admissions on file, affidavits, live testimony or oral argument, although multiple material facts were in dispute, published stigmatizing information regarding the reasons for petitioner, an at-will employee, termination from State Street Bank & Trust Company, which is disputed. It is reasonable to expect that Defendants would have been aware that publishing stigmatizing information is unlawful absent a name-clearing hearing. Preexisting federal law as determined by the Supreme Court provided Defendant's with fair warning that it's conduct was unlawful. Defendant's findings dated December 17,1997In this country where racism is institutionalized, there is no doubt that EEOC's findings, which alleged, "...*After discovery of Complaint's improprieties of respondent's money, Respondent gave Compliant the option of resignation or termination*. .." Would seriously impair Petitioner's outstanding reputation for honesty and morality among family, friends and within the global financial services industry where he has worked in positions of increasing responsibility for +30 years, with the expected adverse financial consequences. Although the allegations were hotly disputed, Defendant's failure to provide plaintiff any opportunity to be heard on this material point, which clearly had severe adverse consequences to his reputation and integrity, represented a clear violation of federal law regarding the minimum requirements of due process as determined by the Supreme Court. Defendant's knew or should have known that since it's findings were subject to full public disclosure, by counsel for State Street, the procedural protections of due process applied. Defendant's clearly violation of clearly defined federal law as defined by the Supreme Court raises important issues regarding the quality of its investigative training, supervision and adequacy of internal control procedures. The issues here are not complicated and there is no ambiguity in federal law governing publication of stigmatizing employee information, qualified immunity is not warranted.

7

23. Defendants reliance on and acceptance as fact, the findings of MCAD and the pleadings of State Street Bank & Trust Company resulted in a failure to meaningfully investigate and act upon the Title VII, ADEA and ADA discrimination complaints filed by Plaintiff. Defendants clearly under-investigated, under-responded, mishandled and failed to protect Plaintiff from a series of discriminatory employment acts or to prosecute those responsible for such acts. Defendants abdicated their responsibility to investigate, develop and charge State Street Bank & Trust Company, certain senior executives and/or agents with crimes against Plaintiff, thereby ratifying and jointly participating in racially motivated acts to deprive Plaintiff of his constitutional and statutory rights. Defendants made decisions on a racially discriminatory basis.

24. Defendants' actions and inactions, as alleged in the Compliant, were pursuant to Defendants' policy, custom, habit, usage and pattern of unequal enforcement of clearly defined civil right's law, based on race. Defendants did not treat white citizens in the same or similar manner as Plaintiff. As a direct and proximate result of Defendants' unconstitutional and illegal racially motivated actions, Plaintiff has suffered the loss of liberty interest, and extreme emotional distress.

25. The root cause of Defendants' actions and inactions stemmed from a well-documented history of racism and racial profiling within the City of Boston. Plaintiff asserts his lost should be valued at "approximately $25,000,000.00.

### HISTORICAL OVERVIEW OF THE CIRCUMSTANCES
### THAT PRECIPATED THIS SUIT

26. Washington was hired on July 2,1992, as a vice president, in the Credit Risk Policy Group by Defendant, State Street Bank & Trust Company, ("State Street"), reporting to Howard H. Fairweather, Executive Vice President.

27. Washington was the only African-American senior manager in the Credit Risk Policy Group.

28. Washington was assigned a pay grade statistically lower than that of other professionals reporting directly to "Fairweather" and inconsistent with "State Street" compensation guidelines as documented in its employee manual,

8

"Wavelength's" states "*Starting Salaries- New employees are hired at a starting salary commensurate with their experience, education, and other qualifications and within the parameters of the established salary range for the position.*"

29. As a result of the lower pay grade, Washington's compensation, salary + bonus, was substantially less than other professionals reporting to "Fairweather" during the term of his employment.

30. Wavelength's, provides as follows, "*Global Human Resources reviews salary ranges at least annually…Employees are paid at least the minimum of their [salary] range. Whenever salary ranges are adjusted upwards, employees with salaries below the new range minimum will have their salaries brought to the new level at the time of the change or at their annual review.*"

31. Washington's 1996 Performance Appraisal rated his performance as Outstanding, among the top 10% of all State Street officers with the following comments from his manager, H.F. Fairweather, Executive Vice President: "*KDW's persistent and calm manner has shown clear results in winning over line unit managers to his process oriented approach to Risk Management…His contribution is extremely valuable.*"

32. 'Wavelength's" on page 28, "*Merit Increases*" provides "*Through the merit program, outstanding performers are rewarded with significant increases.*" State Street" failed without explanation to provide a compensation increase notwithstanding Washington's outstanding performance and the fact that executive management knew or should have known that his compensation was substantially lower than peers and inconsistent with the broad global scope of his responsibilities.

33. As a result of his consistent outstanding performance and the broad global and critical scope of his responsibilities, Washington was appointed Senior Vice President on April 11,1996, by the Executive Committee of the "State Street" Board of Directors.

34. 'Wavelength's" on page 28, "*Promotional Increases*" provides "*In the event of a promotion, your salary may be increased based on performance and*

9

position in the new range...If your salary is below the minimum of the new salary range, the salary will be brought to the minimum."

35. State Street" failed without explanation to provide a compensation increase notwithstanding Washington's senior management appointment and the fact that executive management knew or should have known that his compensation was substantially lower than peers and inconsistent with the broad global scope of his responsibilities.

36. Washington was placed on unpaid leave, by email, on August 15,1996, as a result of administrative lapses regarding expense accounting.

37. Upon his return from a long planned 2-week vacation, [August 16 through September 5] which included dropping his daughter off for her freshman year at Spellman College, Atlanta, Ga., petitioner submitted his letter of resignation to "Fairweather" during dinner at a local Chestnut Hill restaurant, (Ground Round) or about September 9,1996.

38. Fairweather **declined to accept the letter of resignation** and proposed looking into having the bank provide an executive loan[1], $100,000.00, to relieve short-term cash flow problems, caused by Washington having to maintain two homes, pay his daughter's college tuition, keep his son in private school and provide support for his elderly parents who lived with him on Long Island, where he commuted to each weekend.

39. On September 12, 1996 the request for an executive loan was formalized and fully documented in a letter to Fairweather, which clearly summarized the specific causes of my financial difficulties and the source of loan payback.

40. "State Street" declined to provide the executive loan and on October 8,1996, Howard H. Fairweather, Executive Vice President, **_over dinner_** at Logan Airport, Boston, advised petitioner that his resignation would be accepted. The date October 9, 1996 was written in the resignation letter previously submitted to Fairweather and initialed by petitioner.

---

[1] Standard operating procedure for relocating senior executives

41. According to Fairweather[2], resignation was by "***mutual agreement***".

42. Fairweather provided petitioner with a written contract to memorialize the terms of his **no-fault termination** on the business card of Nancy Savage, Vice President/Human Resources which clearly spelled out the specific terms of separation as follows: (1) Separation by "mutual agreement"; (2) to be paid through October 8,1996 plus 13 days of accrued but unused vacation; (3) unemployment compensation under M.G.L. 151B would be paid.

43. On or about October 12, 1996 Washington's resignation for "***personal reasons***" was announced throughout the bank, by memo from Fairweather.

44. Shortly after his resignation Washington advised MN Carter, Chief Executive Officer of "State Street", a close professional colleague of over 20 years that he was suffering from stress and felt burned out.

45. State Street Bank & Trust Company paid unemployment compensation pursuant to M.G.L. 151B for 26 weeks.

46. During November 1996, Washington contacted MN Carter, CEO, requesting an executive severance package[3] consistent with his position as a senior vice president.

47. In a letter dated and mailed on January 6,1997, Washington's request for severance was denied as follows, State Street "***shall not entertain severance compensation to you...***", with a copy to John Towers, State Street General Counsel

48. On July 25, 1997 Washington filed duel discrimination complaints as follows" (1) EEOC #97-BEM-3045 and (2) EEOC Charge # 16C973396 based on a continuing pattern of race based discrimination culminating with the denial of severance benefits on/or about January 6,1997 and violations under Americans with Disabilities Act.

49. In response to petitioner's complaint filed with EEOC Patricia A. Granger, Esq. in her capacity as counsel for State Street Bank & Trust Company,

---

[2] As an executive officer and member of the management committee, Fairweather is clearly a corporate proxy.
[3] Severance/bridge pay are part of the terms and conditions of employment at "State Street" pursuant to its employee manual "Wavelengths"

submitted information, she knew or should have known to be materially false and defamatory regarding the terms of petitioners no-fault termination as an at will employee.

50. In response to petitioner's complaint filed with EEOC, Mary E. O'Neal, Esq. in her capacity as counsel for State Street Bank & Trust Company submitted information, she knew or should have known to be materially false and defamatory regarding the terms of petitioners no-fault termination as an at will employee.

51. In response to petitioner's claim for workers compensation benefits[4] filed with Liberty Mutual Insurance Company, after closed-door private discussions with John Towers, SVP/General Counsel of State Street Bank & Trust Co Jean M. Shea, Esq., in her capacity as counsel for Liberty Mutual Insurance Company, administrator for State Street Bank & Trust Company's workers compensation plan, made defamatory and false statements regarding the terms of petitioners no-fault termination as an at will employee.

52. On/or about September 30,1997 counsel for "State Street" "Respondents Motion To Dismiss" due to lack of jurisdiction based on untimely filing based on the August 15,1996 email as the trigger date for statue of limitations purposes, which they knew to be fraudulent.

53. On or about December 17,1967, after preliminary screening by EEOC's Mary C. Garippo, investigator, Katherine M. Martin, Esq., supervisor and Douglas T. Schwartz, Investigating Commissioner, which relied exclusively on the hotly disputed pleadings of State Street Bank & Trust Company outside counsel, Patricia A. Granger, Esq., and the email of August 15,1996 concluded as follows:

> "Your compliant was not timely filed with the Commission. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations."

---

[4] Due to State Street Bank & Trust Company as Sponsor fro the Short/Long Term Disability Plans, failure to provide information, petitioner was under the false impression he was filing for Short Term Disability benefits.

12

**54.** Plaintiff's compliant was filed approximately 199 days after he received notification that he would not receive severance pay, a contractual benefit of employment, consistent with his position as a senior vice president.

**55.** The compliant alleged he was denied severance benefits consistent with his position as a senior vice president, on the basis of race and Age, in violation of Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act. Washington alleged that the defendant, State Street Bank & Trust Company engaged in a continuing pattern and practice of discriminating against him, in terms of compensation and other "privileges and benefits" of employment, which created a "hostile work" environment.

**56.** Plaintiff's ADA claim was based allegations of improper interference with his claim for disability benefits by State Street Bank & Trust Company employees. Specifically the failure to provide accurate information regarding:

   *a.* Entitlement to benefits for, stress related disorders reported October 1996, under the State Street Bank & Trust Company (ERISA) Short/Long Term Disability,

   *b.* Applying for benefits for, stress related disorders reported October 1996, under the State Street Bank & Trust Company (ERISA) Short/Long Term Disability,

   *c.* Intentionally withholding from the Plan Administrator material information regarding a work environment heavily polluted with discrimination and pattern and practice of unequal/discriminatory compensation,

   *d.* Materially misrepresenting the terms and conditions of petitioners separation with fraudulent intent.

   *e.* Causing its agent, Prudential Insurance not to independently investigate his application for ERISA disability benefits.

**57.** While acknowledging not investigating his compliant  EEOC, Edith Kessler, investigator, and Robert L. Saunders, Area Director, violated petitioner's constitutional right's to due process, under the Fifth Amendment by depriving

him of "liberty interest" by publishing on/or about June 4,1998, the following
hotly disputed stigmatizing information;

> "… ***Respondent's demand that you repay money you improperly
> appropriated…Respondent had no obligation to extend benefits
> especially to someone whose resignation was requested because of
> misappropriation of funds."***

This hotly disputed stigmatizing information, which represented a quasi-
adjudication, was published as fact, in clear violation of well established law as
determined by the U.S. Supreme Court, based on EEOC findings, defendant's
pleadings and carefully selected documentation, without: (1) deposition and/or
live testimony, (2) providing a name clearing hearing, (3) providing a list of
evidence against him or, (3) providing any opportunity to challenge his accusers
through cross examination pursuant to the Sixth Amendment.

58. On June 4, 1998, Robert L. Saunders, Area Director, notified Washington as
follows:

   - ❑ *"We cannot investigate your charge because it was not filed within the
     time limit required by law."*
   - ❑ *Notification of Right to Sue*

59. Since publication of their findings, Plaintiff has written numerous letters to
Defendants and EEOC informing them of the falsity of their 1998
Memorandum and provided dispositive proof thereof. In response EEOC has,
(1) stood by it's findings; (2) re-affirmed its support for its findings; and (3)
denied any liability for publishing defamatory statements. By acting in this
manner EEOC and defendants herein engaged in negligent, irresponsible and
libelous conduct to the harm and detriment of "Washington", and EEOC
further ratified and encouraged the fraudulent and retaliatory conduct of State
Street Bank & Trust Company and counsel.

## FIRST CAUSE OF ACTION
### FOR DEPRIVATION OF LIBERTY INTEREST AND PRIVILEGES AND IMMUNITIES IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS OF THE UNITED STATES CONSTITUION

60. The allegations in paragraphs 1-59are incorporated by reference as if restated in full.

61. The United States Supreme Court has affirmed:

   i. *Greene v. McEloy, 360 U.S. 474, 496-497 (1959):*

   "Certain principals have remained relatively immutable in our jurisprudence. One of these is that where governmental actions seriously injures and individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is true in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealously. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment. . . This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny."

   ii. *Wisconsin v. Constantineau, 400 U.S. 433, 437.*

   "[w]here a person's good  name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice  and an opportunity to be heard are essential."

   iii. *Board of Regents v. Roth, 408 U.S. 564, 573(1972),*

   The United States Supreme Court established that a terminated employee has a constitutional based liberty interest in clearing his name when stigmatizing information regarding the reasons for termination is publicly disclosed.  Failure to provide a "name-clearing" hearing in such a circumstance is a violation of the …. due process clause. . *Roth*, gave "fair

warning" that an employee's liberty interest is implicated if a charge of improper conduct impairs the employee's reputation for honesty or morality. "The procedural protections of due process apply if [as in this case] the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment....

62. Defendants' actions were deliberate and premeditated. Such violations of clearly defined constitutional rights' by an agency of the federal government shock the conscience, and demonstrate a deliberate indifference to liberty interest and due process.

63. Plaintiff was physically and emotionally injured by Defendants.

64. As a consequence of Defendants' intentionally discriminatory actions, Plaintiff was denied his 'liberty interest and the enjoyment of the privileges and immunities of United States citizenship and has sustained severe mental injuries and is entitled to damages estimated at $25,000,000.00.

### SECOND CAUSE OF ACTION
### FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE AND THE PRIVILEGES AND IMMUNITIES CLAUSE OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

65. The allegations in paragraphs 1-59 are incorporated by reference as if restated in full.

66. Defendants deprived Plaintiff of his right to equal protection of the laws and privileges and immunities of citizenship as guaranteed under the Fifth and Sixth Amendments of the United States Constitution.

67. The Defendants engaged in a longstanding and official policy, practice, custom, habit and usage to deny Plaintiff, an African-American, his equal rights under law. This was done in numerous ways, described below.

68. Defendants accepted as fact, the hotly disputed, self-serving pleadings of State Street Bank & Trust Company an employer with a well documented record of discriminatory conduct. Defendants, with deliberate indifference, failed to protect Plaintiffs civil rights from repeated illegal acts, failed to equally enforce Title VII, ADEA and ADEA, branded Plaintiff with the badge of

thief and failed to provide him with any opportunity to confront his accusers and/or be heard.

69. Defendants exceed their authority by making and publishing the quasi-judicial determination "... *Respondent's demand that you repay money you improperly appropriated...Respondent had no obligation to extend benefits especially to someone whose resignation was requested because of misappropriation of funds."* The function of the civil right's commission is purely investigative and fact finding, it does not adjudicate, and it cannot take any affirmative action which will affect legal rights, and the only purpose of its existence is to find facts which may subsequently used as a basis for legislative or executive action. *Civil Rights Act of 1957 sections 101-106, 104(a) (1-3), (b,c), 42 U.S.C. sections 1975-1975e, 1975c(a) (1-3), (b-c).*

70. The false stigmatizing statements published by defendants, which were barred by the clearly defined legal doctrine of law collateral estoppel, were made with reckless disregard for the truth and not supported with any credible evidence.

71. Much like the Spanish Inquisition, the English Court of Star Chamber and the French monarchy's abuse of the *lettre de cachet*, The Defendant's gross negligence in the handling of this compliant is clearly a menace to liberty that if not soundly rejected has the potential to impacts all of us. The egregious mishandling of this compliant supports illegal retaliatory suppression of valid challenges to illegal workplace discrimination, a complete disregard for protected "liberty rights" as well as clearly defined procedural due process. Few things are more immutable in the application of our legal system than the concept of due process. With workplace discrimination complaints rapidly increasing, with African-Americans still very much the victims of deep-seated racial stereotyping as evidenced by the research of a sociologist Devah Pager[5]:

---

[5] "Racial Discrimination is Still at Work in U.S." Wall Street Journal, September 4,2003

17

"*Today in America you have a better chance of being called back for a job interview if you're white with a criminal record than you do if you're black with a clean record- never having been arrested or convicted.*"

72. Defendants did not treat white citizens in the same or similar manner to Plaintiff.

73. As a consequence of the intentional racially discriminatory acts of Defendants, Plaintiff was denied the equal protection of the laws and privileges and immunities of United States citizenship in violation of the Fifth and Sixth Amendments, diminished his personal and professional respect, esteem, goodwill, deterred others from association, precluded any opportunity for future employment within the financial services industry and is entitled to damages in an amount estimated to be $25,000,000.00.

### THIRD CAUSE OF ACTION
### FOR VIOLATION OF 42 U.S.C. SECTION 1981

74. The allegations in paragraphs 1-59 are incorporated by reference as if restated in full.

75. Publication of hotly disputed stigmatizing information by Defendants deprived Plaintiff of his full and equal benefit of all laws and proceedings for the security of his liberty interest as is enjoyed by white citizens in violation of 42 U.S.C. section 1981, including specifically section 1981(c).

76. Publication of hotly disputed stigmatizing information by Defendants also denied Plaintiff the same right to give evidence, as enjoyed by white citizens, in violation of 42 U.S.C. section 1981.

77. Defendants specifically accepted as fact, without question, the hotly disputed, clearly speculative and unsupported allegations made in pleadings by counsel for State Street Bank & Trust Company on the basis of race. This intentional discrimination was accomplished by longstanding practice, custom, habit and usage within the City of Boston, to deny African-Americans their equal rights under law. This was done in numerous ways, described below.

78. The EEOC investigator failed to obtain sufficient evidence to conclusively establish the appropriate trigger date for statue of limitations purposes, which was hotly disputed.

79. The EEOC investigator failed to obtain sufficient evidence to conclusively establish the specific date and terms of Plaintiffs' termination.

80. The EEOC investigator failed to obtain sufficient evidence to conclusively establish under what circumstances severance benefits were paid at State Street Bank & Trust Company.

81. The EEOC investigator failed to obtain sufficient information to determine the relevance of documentation submitted by State Street Bank & Company to Plaintiffs' discrimination compliant.

82. The EEOC investigator failed outright to attempt any reconciliation of hotly disputed material facts through, depositions and/or live testimony with any of the parties involved in the compliant.

83. Defendants did not treat white citizens in the same or similar manner to Plaintiff.

84. Consequently, Plaintiff has sustained injuries in an amount estimated at $25,000,000.00

## FOURTH CAUSE OF ACTION
## FOR VIOLATION OF 42 U.S.C. SECTION 1985

85. The allegations in paragraphs 1-59 are incorporated by reference as if restated in full.

86. Defendants conspired to deprive Plaintiff the equal protection of the laws and equal privileges and immunities under the laws, thereby injuring Plaintiff.

87. In furtherance of this conspiracy, Defendants adopted practices or customs of racial discrimination, as described in the allegations set forth above, that deprived Plaintiff of his liberty interest as well as depriving him of having and exercising the equal protection of the laws and equal privileges and immunities of a citizen of the United States, as described herein.

88. Defendant, Edith Kessler, investigator failed to obtain sufficient evidence to conclusively establish the appropriate trigger date for statue of limitations purposes, which was hotly disputed.

89. Defendant, Edith Kessler, investigator, failed to obtain sufficient evidence to conclusively establish the specific date and terms of Plaintiffs' termination.

90. Defendant, Edith Kessler, investigator, failed to obtain sufficient evidence to conclusively establish under what circumstances severance benefits were paid at State Street Bank & Trust Company.

91. Defendant, Edith Kessler, investigator, failed to obtain sufficient information to determine the relevance of documentation submitted by State Street Bank & Company to Plaintiffs' discrimination compliant.

92. Defendant, Edith Kessler, investigator, failed outright to attempt any reconciliation of hotly disputed material facts through, depositions and/or live testimony with any of the parties involved in the compliant.

93. Defendants did not treat white citizens in the same or similar manner to Plaintiff.

94. Consequently, Plaintiff has sustained injuries in an amount estimated at $25,000,000.00

### NEGLIGENCE

95. The allegations in paragraphs 1-59 are incorporated by reference as if restated in full.

  i. <u>Defendants Did Not Maintain Their Independence</u>

96. EEOC employees must be without bias with respect to all discrimination complaints, otherwise they lack the impartiality necessary for the critical dependability of their findings. To be independent, the investigator must be intellectually honest, sufficiently trained in proper investigative procedures, law and EEOC positions.

  iv. <u>Defendants Failed to Obtain Sufficient and Competent Evidential Matter to Support its Conclusions</u>

Most of the EEOC independent investigators work in forming his or her initial opinion on the merits of a compliant involve evaluating evidential matter concerning assertions in the original compliant. The independent EEOC investigator's direct personal knowledge of the merits of the compliant is obtained through an initial assessment and a determination as to multiple threshold issues the first of which is the statue of limitations. Disputed issues are best resolved through the presentation of relevant documentary evidence,

depositions and/or live testimony. Disputed representations in the form of self-serving pleadings, from either party cannot accepted as fact and are not a valid substitution for the application of basic investigative procedures, which are necessary to afford a reasonable basis for an opinion regarding the merits of a compliant. Without adequate adherence to sound proven investigative procedures an opinion on the merits of a compliant is not warranted.  The EEOC investigator, by failing to follow sound proven investigative procedures failed to obtain relevant evidential matter to support its conclusions.  For example:

97. Defendant, Edith Kessler, investigator, failed to obtain sufficient evidence to conclusively establish the appropriate trigger date for statue of limitations purposes, which was hotly disputed.

98. Defendant, Edith Kessler, investigator, failed to obtain sufficient evidence to conclusively establish the specific date and terms of Plaintiffs' termination.

99. Defendant, Edith Kessler, investigator, failed to obtain sufficient evidence to conclusively establish under what circumstances severance benefits were paid at State Street Bank & Trust Company.

100. Defendant, Edith Kessler, investigator, failed to obtain sufficient information to determine the relevance of documentation submitted by State Street Bank & Company to Plaintiffs' discrimination compliant.

101. Defendant, Edith Kessler, investigator, failed outright to attempt any reconciliation of hotly disputed material facts through, depositions and/or live testimony with any of the parties involved in the compliant.

    v.    Defendant Edith Kessler and Robert L. Sanders Over Relied on Representations Made In Pleadings By Counsel For State Street Bank & Trust Company

102. Pleadings, are an integral part of the evidential matter the investigator obtains, but they are not a substitute for the application of those investigative procedures necessary to reconcile material disputed issues of fact and afford a reasonable basis for an opinion regarding any of the threshold issues. When a representation made by either party is disputed and/or contradicted by other evidence, the EEOC must have procedures that require the

investigator to consider the circumstances, source and reliability of the representations made. Based on the circumstances and source, the investigator should carefully consider whether his or her reliance on self-serving representations made in pleadings is appropriate and justified or whether additional investigation is warranted. Defendant Edith Kessler, investigator, violated sound investigative procedures by placing unquestioned reliance on the integrity of the hotly disputed, self-serving, third party pleadings by counsel for State Street Bank & Trust Company. As a result, Defendant, Edith Kessler, did not corroborate hotly disputed information it received from counsel for State Street Bank & Trust Company.

vi.    Defendants Edith Kessler and Robert L. Sanders Failed To Exercise Due Professional Care  And Professional Skepticism

**103.**    Due professional care requires the investigator to exercise professional skepticism. This requires the investigator to diligently perform, in good faith and with integrity, the gathering and objective evaluation of evidence, especially as it relates to material disputed issues.  In exercising professional skepticism, the investigator should not be satisfied with less than persuasive evidence because of a belief that one management is honest. Professional skepticism is an attitude that includes a questioning mind and a critical assessment of all claims and counter-claims. The EEOC investigator should conduct the investigation with the mindset that recognizes the possibility that a material omission and/or misstatement due to fraud could be present, especially since an adverse finding against the employer will subject it to government and private legal action with the possibility of severe civil and financial penalties.  The investigator also must be without a hint of bias with respect to either party; otherwise the impartiality necessary for the dependability of the findings will be compromised. Notwithstanding these fundamental requirement, Defendant Edith Kessler, failed to exercise professional skepticism, failed to maintain an independent mental attitude and failed to exercise professional due care in the exercise of its investigation into

Plaintiffs discrimination complaints. Specific examples of failing to exercise due professional care include:

a. While erroneously stating that Plaintiff's compliant was time barred, and could not be investigated the Defendants Edith Kessler and Robert L. Sanders, aided and abetted illegal employment discrimination and retaliation against Plaintiff by proceeding to rubber stamp the hotly disputed allegations of State Street Bank & Trust Company without investigation.

b. Defendants accepted as fact, the hotly disputed, self-serving pleadings of State Street Bank & Trust Company an employer with a well documented record of discriminatory conduct, (July 1992-October 1996). Defendants, with deliberate indifference, failed to protect Plaintiffs civil rights from repeated illegal acts, failed to equally enforce Title VII, ADEA and ADEA, branded Plaintiff with the badge of thief and failed to provide him with any opportunity to confront his accusers and/or be heard.

c. Defendants exceed their authority by making and publishing the quasi-judicial determination "... *Respondent's demand that you repay money you improperly appropriated...Respondent had no obligation to extend benefits especially to someone whose resignation was requested because of misappropriation of funds."* The function of the civil right's commission is purely investigative and fact finding, it does not adjudicate, and it cannot take any affirmative action which will affect legal rights, and the only purpose of its existence is to find facts which may subsequently used as a basis for legislative or executive action. *Civil Rights Act of 1957 sections 101-106, 104(a) (1-3), (b,c), 42 U.S.C. sections 1975-1975e, 1975c(a) (1-3), (b-c).*

d. The false stigmatizing statements published by defendants, are barred by the clearly defined legal doctrine of law collateral estoppel and were made with reckless disregard for the truth.

23

vii.    Defendants Failed To Properly Consider The Relevance And Probative Value Of Documents Provided By State Street Bank & Trust Company

**104.**    Defendants, Edith Kessler and Robert L. Sanders, accepted without question, an email, dated August 8,1996, submitted by State Street Bank & Trust Company, as dispositive evidence in determining the trigger date for statue of limitations purposes, without making any attempt to determining its probative value, although Plaintiff clearly indicated the email was voided by the actions of the sender, H.H. Fairweather, Executive Vice President and Plaintiffs supervisor.

**105.**    Defendants, Edith Kessler and Robert L. Sanders, accepted without question State Street Bank & Trust Company's self-serving evidence, although its probative value to the compliant at hand was non-existent and was substantially outweighed by the danger of the resulting unfair prejudice and confusion of the central issues in the discrimination compliant, a continuing pattern and practice of unequal benefits and privileges of employment, ending with the denial of severance benefits and the illegal interference with ERISA short and long term disability benefits.

viii.    Defendants, Failed To Properly Consider Fraud

**106.**    Defendants should specifically assess the risk of material misstatement by any Defendant in a employment discrimination compliant due to fraud and should always consider that assessment during the investigative process:

  **i.** Plaintiffs' compliant, filed 199 days after denial of executive severance benefits was not barred by statue of limitations. The EEOC investigators decision that the compliant was time-barred, based on representations from counsel to State Street Bank & Trust Co. and an email of August 15,1996, erroneously determined the trigger date for statue of limitations purpose. Procedural due process requires in every setting where important decisions turn on questions of fact that an opportunity to confront and cross-examine adverse witnesses. *E.G., ICC v. Louisville & N.R. Co., 227 U.S. 88, 93-94* Defendant, Edith Kessler,  mechanical approach to disputed material issues of fact, resulted in the dismissal of this compliant as time barred.  Applying the traditional, testimonial understanding of Plaintiffs' confrontation rights, as

defined in *Greene v. McElroy, 360 U.S. 474, 496-497 (1959)* and *Goldberg v. Kelly, 397 U.S. 254 (1970)*, "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of the due process clause must be satisfied, this Court must conclude his Fifth and Sixth Amendment Right's were violated when Defendants Edith Kessler and Robert L. Sanders relied exclusively on the email of August 15,1996, without providing Plaintiff any opportunity to challenge, which would have clearly established it to be irrelevant.

## Negligent Infliction Of Emotional Distress

The framework for claims of negligent infliction of emotional distress was established by the SJC in Dziokonski v. Babineau, 375 Mass. 555, 556 (1978), where the Court abandoned the so-called "impact" rule that had denied recovery for physical injuries arising solely from negligently caused emotional distress, and not from any direct bodily injury. See Spade v. Lynn & Boston R.R., 168 Mass. 285, 290 (1897). In Dziokonski, the SJC held that an action could proceed against the driver of a motor vehicle that struck a child on allegations that the child's mother suffered emotional shock and consequent death when she went to the scene of the accident and saw her daughter lying injured on the ground. See Dziokonski v. Babineau, supra at 557, 568. In establishing the limitations of the claim by the mother, a bystander who had not been within the "zone of danger," the Court concluded that "there must be both a substantial physical injury and proof that the injury was caused by the defendant's negligence. Beyond this, the determination whether there should be liability for the injury sustained depends on a number of factors, such as where, when, and how the injury, to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship between the claimant and the third person." Id. at 568. See Migliori v. Airborne Freight Corp., 426 Mass. 629, 638 (1998) (person who witnesses or arrives at scene of accident and renders fruitless aid to victim to whom there is no familial or other preexisting relationship does

not have cognizable claim for negligent infliction of emotional distress). This framework for emotional distress claims was broadened in Ferriter v. Daniel O'Connell's Sons, 381 Mass. 507, 518 (1980), where the Court held that the wife and children of an employee allegedly injured through his employer's negligence could maintain an action for negligent infliction of emotional distress, even though they first observed the employee in the hospital, not at the scene of the accident. The Court further concluded that recovery was permissible not only for those plaintiffs who experienced shock on witnessing the injury to a loved one, but also for those plaintiffs who experienced shock on seeing the injured loved one "closely on the heels of the accident." Id. The physical injury requirement set forth in Dziokonski v. Babineau, supra at 568, was slightly clarified in Payton v. Abbott Labs, 386 Mass. 540, 547 (1982), where the Court stated that it was "in recognition of the tricks that the human mind can play upon itself, as much as of the deception that people are capable of perpetrating upon one another, that we continue to rely upon traditional indicia of harm to provide objective evidence that a plaintiff actually has suffered emotional distress." In order to recover for negligently inflicted emotional distress, a plaintiff had to prove "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Id. at 557. Moreover, the plaintiff was required to substantiate the physical harm with expert medical testimony. Id. at 556. Recognizing the need to "strike a proper balance between the fear of fraudulent claims and the danger of shutting the doors of the courthouse to worthy plaintiffs" and the difficulty in "distinguish[ing] between the mental and the physical aspects of an emotional disturbance," the Court relaxed the physical harm requirement in Sullivan v. Boston Gas Co., 414 Mass. 129, 134 (1993). There, the Court allowed the plaintiffs' claims to go forward where they had produced sufficient objective evidence that they were suffering from *__posttraumatic stress disorder__*, tension headaches, sleeplessness, gastrointestinal distress, nightmares, and

***depression*** as a result of watching their home burn to the ground after a natural gas explosion. Id. at 130-132, 139. The Court concluded, without distinguishing between bystanders and others, that "***plaintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims" were likely genuine. Id. at 137-138.*** While expert medical testimony might be needed to make this showing, it was not mandatory. See id. at 138. See also Bresnahan v. McAuliffe, 47 Mass. App. Ct. 278, 285 (1999). The length of time that plaintiffs experienced particular symptoms could be one reliable indicator of the sufficiency of their evidence. See Sullivan v. Boston Gas Co., supra. n the Sullivan case, "[w]e did not eliminate the physical harm requirement, but merely expanded the range of symptoms that may provide the type of objective evidence to prove physical harm to include symptoms that could be classified as more 'mental' than 'physical.'" Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 412 (2002), S.C., 442 Mass. 1041 (2004). Contrast Migliori v. Airborne Freight Corp., supra at 631-632, quoting Sullivan v. Boston Gas Co., supra at 137-138 ("While no longer considering attendant physical harm as a necessary condition of a cognizable claim for the negligent infliction of emotional injuries, we still require 'objective corroboration of the emotional distress alleged'"). In addition, the Court explicitly stated that "[a] successful negligent infliction of emotional distress claim . . . must do more than allege 'mere upset, dismay, humiliation, grief and anger.'" Sullivan v. Boston Gas Co., supra at 137, quoting Corso v. Merrill, 119 N.H. 647, 653 (1979).

### RELIEF REQUESTED

**WHEREFORE,** plaintiff respectively request Default Judgment

▫ Enter judgment declaring unconstitutional and invalid Defendant's publication in charge #16C973396 of stigmatizing information without providing any opportunity for a name-clearing hearing and/or identifying the evidence used to support it's conclusions.

- ❑ Plaintiff's Title VII; ADA; ADEA and Retaliation allegations to be re-investigated, with findings submitted to this Court within 30 days.
- ❑ Plaintiff further request that the Court award:
  - ❑ Compensatory Damages in the amount of $25,000,000.00
  - ❑ Punitive Damages as deemed appropriate by this Court
  - ❑ Court cost including all reasonable attorney's fees.

For such other and further relief that the Court deems just and proper.

Respectively submitted, this October 3, 2005

KEITH D. WASHINGTON, PRO SE
6265 MAGNOLIA RIDGE
STONE MOUNTAIN, GEORGIA 30087
TEL: 770 465 4088
FAX: 770 465 8595
EMAIL: kdwash@aol.com

**ATTACHMENT A: PLAINTIFF'S EEOC COMPLIANT**
**ATTACHMENT B: EEOC PUBLISHED FINDINGS**
**ATTACHMENT C: COPY OF MASSACHUSETTS UNEMPLOYMENT CHECK**
**ATTACHMENTD: PROOF OF SERVICE- ROBERT L. SANDERS**
**ATTACHMENT E:PROOF OF SRVICE- EDITH KESSLER**

SEP 0:    ATTAchment A    1-4556    F. 2

CeRTified t 1L P425-938-125

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

ENTER CHARGE NUMBER

☐ FEPA  97-BEM-3045
☐ EEOC  16C973396

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION and EEOC
(State or local Agency, if any)

| NAME (Indicate Mr., Ms., or Mrs.) KEITH D. WASHINGTON | HOME TELEPHONE NO. (Include Area Code) 404 633-1363 |
|---|---|

| STREET ADDRESS 3040 CLAIRMONT Rd (APTE) | CITY, STATE AND ZIP CODE ATLANTA GA 30325 | COUNTY |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME STATE STREET BANK + TRUST Co | NO. OF EMPLOYEES/MEMBERS + 12,000 | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|

| STREET ADDRESS 225 FRANKLIN Street | CITY, STATE AND ZIP CODE BOSTON, MA |
|---|---|

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☒ AGE ☒ RETALIATION ☒ OTHER (Specify) ADA | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (Month, day, year) 2/13/97 |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s)):

See ATTAched                                        2/1/47

1. July 7, 1997 Letter to MCAD

2. "the Road To Burnout"

3. "Resume"

4. Promotion (AAR. 11, 1996)

5. Position Description

JUL 2 - 1997

AGAINST DISCRIMINATION

This is the 3rd Request (wone original request 2/97 by FAX) -
Please Provide File/case Number.                    177

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary to meet State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. KDWashg | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT KDWashg |
| Date          Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 21, July, 1977   William C. Shuster |

**KEITH D. WASHINGTON**
**3040 CLAIRMONT ROAD [APT. E]**
**ATLANTA, GEORGIA 30329**
**TEL: 404 633 1363**
**FAX: 404 633 0610**

COPY

July 7, 1997

Massachusetts Commission Against Discrimination
One Ashburton Place, 6th Floor
Boston, MA 02108

Discrimination Compliant:
1. Race based wage Discrimination
2. Race based unfair labor practices
3. Americans with Disabilities Act

1. I Keith D. Washington, am African-American male adult, honorably discharged
Vietnam Era Veteran, individual currently residing at, 3040 Clairmont Road [Apt.
E], Atlanta, GA 30329, am the complaining party in this matter.

2. The Defendant in the above captioned matter is: State Street Bank & Trust
Company, with principal offices at 225 Franklin Street, Boston, Ma, and a wholly
owned subsidiary of State Street Corporation a bank holding company organized
under the laws of the Commonwealth of Massachusetts

3. I was employed by State Street as follows, July 2, 1992 through October 9,
1996.

COMPLIANT I

Violations under Title VII of the 1964 Civil Rights Act as amended, plus
applicable Commonwealth of Massachusetts Civil Rights and/or Labor Law.

I have been and continue to be a victim of a pattern of systemic wage
discrimination [which violates State Streets own written policy]as follows:1
1. Although I was recruited for a "senior management position" the initial
employment offer failed to provide either a bonus component and/or vested
pension agreement.
2. Within 30 days of joining State Street, I assumed corporate risk management
oversight responsibility for "Fiduciary" activities. These activities accounted
for 88% of revenue in 1992. My compensation level at $100,000.00 per year was
significantly below:
* Peers within State Street
* Peers at other similar institutions
3. These discriminatory practices continued as follows:
* Bonus payments:
* February 1993 through 1996
* Membership in Global Management Forum
* April 1996 promotion to Senior Vice President [$0 salary increase]



COPY

4. Management declined [4 years] to provide administrative and/or secretarial support consistent with my senior management position and the rapidly increasing level of responsibilities. This made it necessary to do my own typing and other minor administrative duties, my workday began increasing to 15-18 hours.

5. Upon my "resignation" for administrative lapses dealing with my handling of expenses, the banks own investigation revealed no illegal activity, I was denied the typical "Executive Severance Package" and advised to apply for Unemployment Insurance.


COMPLIANT II

Violations of the Americans with Disabilities Act:

1. Although notified on multiple occasions [November 7, 1996 and February 13, 1997] that I was suffering from a "stress related disorder commonly referred to as "Professional Burnout", State Street through it's attorney responded with typical corporate arrogance.

2. Communication from State Street attorneys dated February 13, 1997 is only the most recent act in a chain of continuing violations and systemic patterns of violations.

3. Since State Street has a well-documented history of retaliation against employees who claim, and prove they were victims of discrimination I have no interest in ever returning and am seeking a financial settlement in lieu.

The reality at State Street during my 4 year tenure is that I was required to meet a significantly higher standard than my white counter-parts and I did it.

I am requesting a "Fast Track" resolution of this matter since I believe the compensatory amount due me because of State Street's wage discrimination to be more than $500,000.00; additionally I am requesting maximum punitive damages.

*Kis Wash*
Keith D. Washington

cc:
Equal Employment Opportunity Commission
Veterans administration
Warren Pyle, Esq.


Attachments:
State Street Compensation Policy
Position Description



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Boston Area Office**

John F. Kennedy Federal Building
Room 475, 4th Floor
Boston, MA 02203-0208
PH: (617) 565-3200
TDD: (617) 565-3204
FAX: (617) 565-3196

May 27, 1998

ATTACHMENT B

Keith D. Washington
3040 Clairmont Road, Apt E
Atlanta, GA 30329

Re: Charge No. 16C973396, Keith D. Washington v State Street Bank & Trust

Dear Mr. Washington :

This letter is being sent to inform you that this office has investigated the charge of employment discrimination you filed and will be issuing its determination as to whether there has been a violation of the laws enforced by the Equal Employment Opportunity Commission.

A summary of your allegations(s), the evidence gathered during the investigation, and the recommended findings follow:

You alleged that you were discriminated against because of your age (DOB 2/1/47) in violation of the Age Discrimination in Employment Act (ADEA), your race and color, black, in violation of Title VII, and your disability, stress disorder, in violation of the Americans with Disabilities Act (ADA) . In addition you alleged that you were retaliated against in that you were denied a severance package.

Evidence indicates that allegations regarding termination, wages and other issues are untimely. This commission has the authority to investigate charges of harm that occurred within 300 days of the date of filing. You filed the above cited charge on July 25, 1997. For this charge, the 300 day jurisdictional time period extends from July 25, 1997 to September 28, 1996. Therefore harm would have to have occurred during that period. The date you resigned, September 9, 1996, was prior to that period. Further, the alleged date of harm, when you were given the option to be terminated or resign, was even earlier, August 15, 1996.

The events that followed your termination and fall into the 300 day period are those that involve your demands for a severance package and Respondent's demand that you repay money you improperly appropriated. The issues do not constitute retaliation. You had not previously filed an action alleging discrimination based upon race/color, age and disability to which there was a causal connection. Months after termination you demanded a severance package (two years of salary, moving expenses, two years medical, life insurance, membership in a health club, a laptop

ATTACHMENT C

## EXHIBIT II

### UNEMPLOYMENT INSURANCE

### M.G.L. Chapter 151A: Section 25 Disqualification for benefits

**Section 25**. .. no benefits shall be paid to an individual under this chapter for--

**(c)(3)( e)** .... **(2)** by discharge shown to the satisfaction of the commissioner by substantial and credible evidence to be attributable to deliberate misconduct in wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence...

4-18-97

| WEEK ENDING | | | GROSS EARNINGS | DEP. ALLOW. | DEDUCTIONS | | | | | | NET PYMT | CHECK AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MO. | DAY | YR. | | | EARNINGS | PENSION | CHILD SUP | OVER PYMT | FED TAX | STATE TAX | | |
| | 4-05-97 | | .00 | 50.00 | .00 | .00 | .00 | .00 | 0.00 | 0.00 | 412.00 | 824.00 |
| | 4-12-97 | | .00 | 50.00 | .00 | .00 | .00 | .00 | 0.00 | 0.00 | 412.00 | |

| SOC. SEC. ACCT. NO 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 | BENEFIT RATE 362.00 | CHECK NO. 66-390783 | THIS PART IS FOR YOUR RECORDS DETACH BEFORE CASHING | BALANCE 2172.00 |
|---|---|---|---|---|

**PAYMENT IS FOR**

| WEEK ENDING 4-05-97 | WEEK ENDING 4-12-97 |
|---|---|

S.S.A. NO. 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

50

*Commonwealth of Massachusetts* 66-390783
*Division of Employment and Training*                            05173

TO THE DEPUTY DIRECTOR, MASSACHUSETTS DEPARTMENT OF EMPLOYMENT AND TRAINING, PAYABLE THROUGH ANY BANK OR TRUST COMPANY, COLLECTIBLE THROUGH THE BOSTON CLEARING HOUSE.

53-283 / 113

NOT VALID IF IN EXCESS OF $999.00

**StateStreet** BOSTON, MASSACHUSETTS 02101 STATE STREET, QUINCY

| DOLLARS | CENTS |
|---|---|
| **824.00 | |

PAY ***EIGHT HUNDRED TWENTY-FOUR AND 00/100

VOID 90 DAYS FROM DATE OF CHECK
MO. DAY YR.
4-18-97

TO THE ORDER OF:

KEITH  D  WASHINGTON
3040 E. CLAIRMONT RD.
ATLANTA        GA  30329

⑈66390783⑈ ⑆011302836⑆ 8810720 6⑈

# EXHIBIT III

## UNEMPLOYMENT INSURANCE

**M.G.L. Chapter 151A: Section 25 Disqualification for benefits**

   ***Section 25***. .. no benefits shall be paid to an individual under this chapter for--

*(c)(3)( e)  …. (2)* …

An individual **shall not be disqualified** from receiving benefits under the provisions of this subsection, if such individual establishes to the satisfaction of the commissioner that his reasons for leaving were for such an urgent, compelling and necessitous nature as to make his separation involuntary.

An individual **shall not be disqualified**, under the provisions of this subsection, from receiving benefits if it is established to the satisfaction of the commissioner that the reason for leaving work and that such individual became separated from employment due to ..., ***racial or other unreasonable harassment*** where the employer, its supervisory personnel or agents knew or should have known of such harassment.

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| KEITH D. WASHINGTON | 05CV10619 |

| DEFENDANT | TYPE OF PROCESS |
|---|---|
| ROBERT L. SAUNDERS, IN HIS INDIVIDUAL CAPACITY | COMPLIANT |

| SERVE AT | NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| | EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, JFK FEDERAL BUILDING, |
| | ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)* |
| | GOVERNMENT CENTER, ROOM 475, BOSTON, MA 02203-0506 |

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | | |
|---|---|---|
| RICHARD NICI, DOCUMENTS CLERK<br>U.S. DISTRICT COURT-MASSACHUSETTS<br>1 COURTHOUSE WAY [SUITE 2300]<br>BOSTON, MA 02210 | Number of process to be served with this Form 285 | 1 |
| | Number of parties to be served in this case | 2 |
| | Check for service on U.S.A. | 2005 |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses,*
*All Telephone Numbers, and Estimated Times Available for Service):*

Fold

| Signature of Attorney other Originator requesting service on behalf of: | ☒ PLAINTIFF<br>☐ DEFENDANT | TELEPHONE NUMBER<br>770 465 4088 | DATE<br>8/12/05 |
|---|---|---|---|
| *Kiwerby    Pro Se* | | | |

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated.<br>*(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin<br>No. 38 | District to Serve<br>No. 38 | Signature of Authorized USMS Deputy or Clerk | Date<br>8/19/05 |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)*<br>KAKeeA Gndwen | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode |
|---|---|

| Address *(complete only different than shown above)* | Date<br>8/31/05 | Time<br>10:30 ☒ am ☐ pm |
|---|---|---|
| | Signature of U.S. Marshal or Deputy | |

| Service Fee | Total Mileage Charges including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | |
|---|---|---|---|---|---|
| 45.00 | — | — | 45.00 | 35.00 | $10.00    $0.00 |

REMARKS:

PRINT 5 COPIES:
1. CLERK OF THE COURT
2. USMS RECORD
3. NOTICE OF SERVICE
4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.
5. ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev. 12/15/80
Automated 01/00

USM-285 is a 5-part form. Fill out the form and print 5 copies. Sign as needed and route as specified below.

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| KEITH D. WASHINGTON | 05CV10619 |

| DEFENDANT | TYPE OF PROCESS |
|---|---|
| EDITH KESSLER, IN HER INDIVIDUAL CAPACITY | COMPLIANT |

| | NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| SERVE AT | EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, JFK FEDERAL BUILDING, |
| | ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)* |
| | GOVERNMENT CENTER, ROOM 475, BOSTON, MA 02203-0506 |

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | | |
|---|---|---|
| RICHARD NICI, DOCUMENTS CLERK<br>U.S. DISTRICT COURT-MASSACHUSETTS<br>1 COURTHOUSE WAY [SUITE 2300]<br>BOSTON, MA 02210 | Number of process to be served with this Form 285 | 1 |
| | Number of parties to be served in this case | 2 |
| | Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service)*:

Fold

U.S. MARSHAL SERVICE RECEIVED BOSTON, MA 2005 AUG 19 A 11: 28

| Signature of Attorney other Originator requesting service on behalf of: | ☒ PLAINTIFF<br>☐ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|---|
| *Pro se* | | 770 465 4088 | 8/12/05 |

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY— DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated.<br>*(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process<br>1 | District of Origin<br>No. 38 | District to Serve<br>No. 38 | Signature of Authorized USMS Deputy or Clerk | | Date<br>8/19/15 |
|---|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)*<br>R + Keea  Gardner | | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode |
|---|---|---|
| Address *(complete only different than shown above)* | | Date<br>8/31/05 | Time<br>10  30 ☒ am ☐ pm |
| | | Signature of U.S. Marshal or Deputy |

| Service Fee | Total Mileage Charges including *endeavors* | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S.M |
|---|---|---|---|---|---|
| 45.00 | — | — | 45.00 | 35.00 | 10.00     $0.00 |

REMARKS:

1. CLERK OF THE COURT
2. USMS RECORD
3. NOTICE OF SERVICE
4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.
5. ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev. 12/15/80
Automated 01/00